City of Chicago, a Municipal Corporation, Plaintiff-Appellee, v. John A. Hutter, Jr., Clara N. Hutter, His Wife, and Marian Coy, Defendants-Appellants.

Gen. No. 53,386.

First District, First Division.

May 19, 1969.

Rehearing denied June 16, 1969.

John A. Hutter, Jr., pro se, of Chicago, for appellants.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and Howard C. Goldman, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The City of Chicago brought suit in the Circuit Court of Cook County against the defendants to compel them to make certain improvements to a building owned by them so that the building would comply with certain provisions of the Municipal Code of Chicago. The case was heard by the trial court without a jury. After hearing testimony from both parties, the court ordered that the defendants vacate any two apartments on the fourth floor of their building which was found to violate sections 67–4 and 78–15.1 of the Municipal Code. The defendants appeal from the court's order.

The building in question is located at 3526 and 3528 North Marshfield Avenue in Chicago. Originally, there were two two-story buildings on the site, one of which was of stone construction. A permit was issued in 1936 by the Building Department of the City allowing the defendants to construct and remodel the premises. Presently, a four-story multiple dwelling brick building with a basement occupies the site.

In its two-count complaint filed on December 15, 1967, the City alleged that various violations of the Municipal Code existed in the building. However, at the trial

the sole issue considered by the court was whether there existed the requisite means of egress from each of the three apartments on the top (fourth) floor of the premises.

The City alleges that the defendants are in violation of section 78–15.1 of the Municipal Code which provides that "[e]very family unit and rooming unit shall have safe, unobstructed means of egress leading to safe and open space at ground level." The City further alleges that the defendants' building violates section 67–4 of the Municipal Code, the applicable portion of which provides:

> There shall be not less than two exits from every building, floor, space or room, except that one exit shall be permitted under the following conditions:
>
> > (e) In Multiple Dwellings, one exit door shall be permitted to a public corridor from a dwelling unit having not more than five habitable rooms and having an area not exceeding 1,000 square feet.

The City contends that the defendants are in violation of these two sections because the fourth floor apartments lack the required means of egress. Further, the other purported means of egress from the fourth floor apartments are neither safe nor unobstructed and do not lead to the ground level.

The defendants argue that they are not guilty of any violations of the Municipal Code. Alternatively, the defendants contend that their building was constructed under a permit issued in 1936 and conformed with all Code requirements at that time. The defendants question whether the public welfare demands retroactive application of the present Code in light of the fact that "the defendants would suffer unreasonable exactions as compared with the resulting public benefit if they are forced to vacate two of the penthouse units which

are the most desirable and command the highest rent in the building." Lastly, the defendants claim that "a property owner should be protected and the City should be estopped from ignoring the decisions, orders, and commitments made by its building department" in the past.

In order to determine the validity of defendants' first claim, i. e., that they are not guilty of any Code violations, the record must be examined in some detail. The transcript of the trial reveals that each of the apartments on the first, second and third floors has an entrance on a common or public corridor and that the corridor has a stairway at each end descending to the ground floor. Thus, as admitted by the City, the occupants of the apartments on the first three floors have two effective and acceptable means of egress.

The units above the three floors are described by the defendants as penthouse units and occupy part of the roof level. These units appear to us to comprise a fourth floor. Presently there are three units rented on this fourth floor and these three shall be denominated as the front, middle, and rear apartments.

Ingress and egress to the front apartment on the fourth floor is by means of a stairway leading from the third floor corridor to the fourth floor. The only other means of egress from the front apartment is through a breakthrough door to the middle apartment or by climbing a ladder to the roof.

Ingress and egress to the middle and rear apartments is by a stairway from the third floor corridor. There is a platform at the top of this stairway at the fourth floor level. Two doors open on to the platform, one door to the rear apartment and the other to the middle apartment. The only other means of egress from the rear apartment is a door in the bedroom leading to a balcony

and then a climb on a ladder leading to the roof. The middle apartment has a window through which the occupant could reach the roof. There is also a breakthrough door between the middle and front apartment.

The trial judge found and recited in his order the following:

> 1. That the rear stairwell . . . between the 3rd and 4th floor is a common stairwell [for the rear and middle apartments] and not a private entrance to an apartment.
>
> 2. That the second means of egress at the subject premises on the 4th floor or penthouse apartments is dangerous and hazardous as it requires either for entry to another individual's apartment and/or breaking of glass to open a door or window or the climbing and descending of a ladder or ladders.

██ ██ The evidence establishes that at least two of the three apartments (the middle and rear apartments) have but one acceptable means of egress in violation of the Municipal Code of Chicago. We are not persuaded by defendants' argument that occupants of the fourth floor apartment could exit onto the roof of the building, climb a ladder about ten feet to the roof of a contiguous building owned by the defendants, and make their way down the rear stairs of the second building to ground level. This means of egress could hardly be said to comply with the ordinances or qualify as a safe means of egress. For these reasons we are satisfied that the order of the court ruling that the fourth floor of the subject property must be converted into a single apartment with egress to the stairways both at the front and rear of the building is a proper one and is amply supported by the evidence.

In support of their second contention, that the present Code should not be applied retroactively to them, the defendants cite Kaukas v. City of Chicago, 27 Ill 2d 197, 188 NE2d 700, and City of Chicago v. Miller, 27 Ill2d 211, 188 NE2d 694. In Kaukas, the Illinois Supreme Court reversed the judgment of the Circuit Court which held invalid a section of the Municipal Code prohibiting the use of glass panel doors as a secondary means of exit. The Court stated that there are no hard and fast rules as to whether the burden upon property owners is so great compared to the public benefit that an ordinance must be held invalid. However, the Court felt that the public had a right to the safest method of protection from fire which can be found and a Municipality has the duty to provide such protection. "It is clear that a city may lawfully make building requirements applicable to buildings in existence at the time the ordinance was enacted, even though these buildings complied with the ordinance in effect at the time the new ordinance was enacted." Kaukas v. City of Chicago, 27 Ill2d 197, 201, 188 NE2d 700, 702.

In City of Chicago v. Miller, 27 Ill2d 211, 214, 188 NE 2d 694, 696, the companion case to Kaukas, the Court stated that "[t]he mere fact that the building was originally constructed under the authority of a permit issued by the city in no way estops the city from bringing an action to compel compliance with the existing code." There the defendants contended that after a lapse of more than sixty years since the original construction of the building the city should be estopped from complaining about building violations. We fail to see how these two cases help the defendants' case and we hold that there are no special circumstances in the case at bar that would warrant the application of the doctrine of estoppel.

■ The public benefit resulting from the enforcement of the ordinance in the instant case clearly out-

weighs any detriment or loss of income suffered by the defendants. Protection from fires and the resulting casualties is the primary duty of the city. Thus, for the foregoing reasons, we are of the opinion that the Judgment Order of the Circuit Court should be affirmed.

Judgment affirmed.

ADESKO, P. J. and MURPHY, J., concur.