(No. 37293.—

ADOLPH KAUKAS *et al.,* Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed February 1, 1963.—Rehearing denied March 27, 1963.*

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and HARRY H. POLLACK, Assistant Corporation Counsel, of counsel,) for appellant.

HARRY G. FINS, FAVIL DAVID BERNS, and SAMUEL B. BASS, all of Chicago, for appellees.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The plaintiffs, Adolph Kaukas and Vera Kaukas, who were owners of an apartment building in Chicago, filed suit in the superior court of Cook County seeking a declaratory judgment holding that section 78—15.9(b) of the Chicago Municipal Code, which prohibited the use of glass panel doors as a secondary means of exist, was invalid. The trial court entered a judgment holding that the ordinance was invalid as applied to buildings in which glass panel doors had been legally installed under the provisions of previous ordinances. The trial judge certified that the validity of a municipal ordinance was involved and the city has appealed directly to this court.

For many years the Chicago Municipal Code has provided that in all multiple dwellings there must be at least two public vertical means of exit leading to the main exit level of the building, which means of exit must be accessible from each dwelling unit. Prior to 1956 it was provided that for certain apartments a secondary means of exit might be by access to a second stairway through another apartment, provided that the door between the two apartments was equipped with a glass panel having a certain size and strength. The purpose of the glass panel was to enable the tenants of one apartment, whose primary means of exit might be barred by fire, to break the glass and either reach through the opening and unlock the door from the other side, or step through the opening into another apartment which had another means of exit. In 1956 the Code was amended so as to prohibit the installation of glass panel doors as a secondary means of exit in any new construction or conversion. This provision was effective July 1, 1956. At the same time, the council enacted section 78—15.9(b) which provided that the glass panel doors could not be used in any building as a secondary means of exist after December 31, 1961. It is the latter provision with which we are concerned.

The issue here, as it was in *City of Chicago* v. *Miller*,

post, 211, adopted this term, is whether the city is empowered by any act of the legislature to enact such a provision, and further, whether such a provision, when made to apply to existing buildings, deprives the property owner of due process of law or deprives him of his property without just compensation.

The legislature has provided that municipalities may prescribe the strength and manner of constructing buildings, and may cause all buildings which are in a dangerous fire condition to be put in a safe fire condition. (Ill. Rev. Stat. 1959, chap. 24, pars. 23—70, 23—72.) There was considerable evidence in the present case dealing with the question of whether glass panel doors as a secondary means of exit are safe. We do not believe that it is necessary to go into this evidence in detail. In a verbal opinion, the trial judge stated that the evidence showed that there are many objections to a glass panel door as a secondary means of exit. For example, the tenants might not be familiar with the use of such a door and might be reluctant to break the glass and go into another tenant's apartment; persons could cut themselves on the broken glass; the door might be blocked by furniture; the tenants might not know how to reach the exit through the other apartment, *etc.* The judge stated that he was satisfied from the evidence that a glass panel door exit was not a first class exit and was not as satisfactory as a direct means of exit. Our review of the abstract satisfies us that these findings were amply supported by the evidence.

The judge stated that there was no question in his mind but that the city had the power under the provisions of the Revised Cities and Villages Act to prohibit the use of glass panel doors in new construction as a reasonable exercise of the city's police power. The judge also stated that the legislature had given cities the power to make laws which affect existing buildings, but that there was a limit to that power, dependent upon whether the benefit to the

public was sufficiently large in comparison to the cost to the owners. Although the present case involved only one building, the judge stated that he felt that the substantial expense to the owners of the thousands of buildings which would be affected by this ordinance rendered the ordinance unreasonable, arbitrary and unjust. We are of the opinion that the trial judge erred in this ruling. It is clear that a city may lawfully make building requirements applicable to buildings in existence at the time the ordinance was enacted, even though these buildings complied with the ordinance in effect at the time the new ordinance was enacted. (*Abbatte Bros.* v. *City of Chicago*, 11 Ill.2d 337; *City of Chicago* v. *Miller*, post, 211, adopted this term.) The question in these cases is whether the public welfare demands retroactive application and whether the property owners affected suffer unreasonable exactions as compared with the resulting public benefits. The public has a right to the safest method of protection from fire which can be found and a municipality has the duty to provide such protection. (*City of Seattle* v. *Hinckley*, 40 Wash. 468, 82 Pac. 747.) The testimony of the witnesses here and the findings of the trial judge as expressed in his opinion show that glass panel doors as a secondary means of exit are not as safe as a direct means of exit. We think it is clear that in view of this evidence and finding a reasonable basis exists for the determination by the city council that the public safety required application of this ordinance to existing buildings. The only remaining question, therefore, is whether the burden upon the property owners is so great compared to the public benefit that the ordinance must be held invalid. No hard and fast rules can be laid down in such cases. In *Abbatte Bros.* v. *City of Chicago*, 11 Ill.2d 337, we cited with approval *Adamec* v. *Post*, 273 N.Y. 250, 7 N.E.2d 120, where the New York court held that it was not unreasonable to give retroactive effect to a regulation requiring installation of modern sanitary and safety facilities where

the alteration would cost $5,000 and the building was assessed at $13,500. In *Queenside Hills Realty Co.* v. *Saxl,* 328 U.S. 80, 90 L. ed. 1096, the United States Supreme Court upheld a New York statute providing that existing buildings must install certain new fire prevention equipment. The complaint filed in the trial court alleged that the building in question had a market value of about $25,000 and the cost of complying with the law would be about $7,500. The property owner's complaint seeking a declaration that the law was invalid was dismissed by the trial court and this dismissal was upheld by the Appellate Division and the Court of Appeals of New York. In the United States Supreme Court the property owner argued that its building was largely fireproof and that any fire hazard which would exist was adequately safeguarded by fire alarms, constant watchman service and other safety arrangements. The Supreme Court stated that the legislature might choose not to take the chance that human life will be lost and might adopt the most conservative course which science and engineering offer and held that it was for the legislature to decide what regulations are needed to reduce fire hazards to the minimum. The court pointed out that many types of social legislation diminish the value of the property which is regulated and stated that in no case does the owner of a property acquire immunity against exercise of the police power because the property had been constructed in full compliance with the existing laws. The Supreme Court affirmed the judgment and held that there was no violation of due process of law.

In the present case it appears that the building was originally purchased for $36,000 and that by reason of various improvements, the plaintiffs had a total in excess of $59,000 invested in the building. The evidence is not clear as to how much it would cost to eliminate the glass panel doors and provide direct means of exit, but according to the evidence it can be said that the cost of compliance

would be somewhere between $5,000 and $10,000. When this cost is measured against the total cost of the building and considered in connection with the fact that the installation of direct means of exit would render the building more safe and would protect the tenants from the danger of fire, we think it is clear that the ordinance is not unreasonable as applied to existing buildings and does not deprive the owners of their property without due process of law.

The plaintiffs also contend that the ordinance deprives them of their property without just compensation. A short answer to this contention is found in *Goldblatt* v. *Town of Hempstead,* 369 U.S. 590, 8 L. ed. 2d 130, 133, where the United States Supreme Court said in discussing a contention that an ordinance deprived property owners of their property without just compensation, "If this ordinance is otherwise a valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional." As we have pointed out in this opinion, the ordinance is a reasonable exercise of the city's police powers. There is, therefore, no merit to the contention that the ordinance deprives the owners of their property without just compensation.

In an attempt to support the judgment of the trial court, the plaintiffs also contend that the ordinance with which we are concerned is invalid because it violates section 73—1 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1959, chap. 24, par. 73—1.) We do not believe that it is necessary in this opinion to consider this contention at length. An identical contention was advanced by certain property owners in *City of Chicago* v. *Miller,* post, 211, and we held in that case that section 73—1 granted municipalities the power to enact zoning ordinances and had nothing to do with the powers of municipalities to prescribe building regulations and restrictions.

As an alternative contention, plaintiffs argue that the city is estopped from enforcing the ordinance. The facts

upon which this alleged estoppel is based are as follows. The plaintiff Vera Kaukas and her then husband, Mike Luke, bought the building in 1948 as joint tenants. After Mike's death Vera married the plaintiff Adolph Kaukas, and through a conveyance to a third party and a reconveyance, title became vested in Adolph and Vera as joint tenants in 1954. At the time the property was originally acquired by Vera, the building contained 12 apartments and 6 bathrooms. The doors leading from the front apartments to the rear apartments had glass panel doors. In 1956, before the present ordinance was enacted, the plaintiffs hired a contractor to remodel their building so as to provide private baths for each of the apartments in addition to other alterations. When they applied for a permit they stated that they desired to convert the building from a 6-apartment building to a 10-apartment building. The permit was issued and the work was completed at a cost in excess of $13,000. The plaintiffs contend that the city is estopped to complain about the use of the glass panel doors by reason of the fact that the city had issued this permit and the plaintiffs had expended substantial sums in reliance thereon. In *City of Chicago* v. *Miller,* post, 211, we reviewed the authorities with respect to the doctrine of estoppel as applied to municipal corporations and we do not believe that it is necessary in this opinion to repeat what was said there. The building in the present case originally contained 12 apartments and utilized glass panel doors as a secondary means of exit for the front apartments. In spite of the fact that the building contained 12 apartments at the time plaintiffs applied for the permit, plaintiffs represented to the building department of the city that the building contained only 6 apartments and stated that they wished to convert it to a 10-apartment building. In a colloquy between the court and counsel at the time this discrepancy appeared, counsel for the plaintiffs stated that it was necessary to represent to the building department that the build-

ing only contained 6 apartments at the time the permit was applied for because the records of the building department showed that the building originally had 6 apartments and that there had never been a permit issued authorizing the conversion to 12 apartments. Plaintiffs are in a poor position to urge the doctrine of estoppel when it appears that the permit which furnishes the basis for their contention was obtained by false representations. Furthermore, the building already contained glass panel doors as secondary exits at the time of the remodeling in 1956 and nothing in the permit specifically authorized a remodeling of the building so as to install this type of door. We are of the opinion that the city is not estopped to enforce this ordinance against the plaintiffs.

After a full consideration of all of the contentions advanced on this appeal, we are of the opinion that the trial court erred in holding the ordinance invalid. The judgment of the trial court is therefore reversed.

*Judgment reversed.*