QUEENWOOD EAST SHELTERED CARE HOME, LTD., Plaintiff-Appellee and Cross-Appellant, *v.* THE VILLAGE OF MORTON, Defendant-Appellant and Cross-Appellee.

Third District   No. 80-92

Opinion filed March 17, 1981.

GREEN, J., concurring in part and dissenting in part.

Thomas E. Davies, of Elliff, Keyser & Hallberg, of Morton, for appellant.

Michael L. Bush, of Morton, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal concerns itself with the validity of an ordinance adopted by the board of trustees of the village of Morton. Plaintiff filed a complaint in declaratory judgment (Ill. Rev. Stat. 1979, ch. 110, par. 57.1) asking that the circuit court of Tazewell County declare the ordinance

52

void on either of two grounds: (1) That it was beyond the police power of the defendant; or (2) that certain provisions offended against the due process provisions of the constitutions of the United States and the State of Illinois. The trial court held that the ordinance was void as being beyond the regulatory power of the defendant. Defendant appeals this judgment. The trial court also found in favor of the defendant on the various constitutional issues. Plaintiff cross-appeals this judgment. We affirm the trial court's finding and judgment as to the regulatory power issue and reverse as to the constitutional issues.

The matter was submitted to the trial court on a stipulation of facts. The ordinance in question reads as follows:

"ORDINANCE NO. 1978

AN ORDINANCE TO REGULATE AND PROHIBIT FALSE ALARMS

WHEREAS, the Morton Municipal Code was adopted on March 2, 1970, and duly published in book form; and

WHEREAS, the Village Fire Chief has advised the Village Board of an increasing number of false fire alarms due to improper maintenance of fire detection systems;

WHEREAS, the Village incurs substantial costs in the event of a false fire alarm;

WHEREAS, the continual answering of false fire alarms subjects other property owners to substantial risks;

WHEREAS, after due and careful consideration, the Village Board deems it to be in the best interests of the Village of Morton to prohibit the existence of faulty fire detection systems;

NOW, THEREFORE, BE IT ORDAINED BY THE PRESIDENT AND BOARD OF TRUSTEES OF THE VILLAGE OF MORTON, Tazewell County, Illinois, that the Morton Municipal Code is hereby amended by adding Title 5, Chapter 4, Sections 1 through 6 as follows:

5—4—1: FIRE DETECTION SYSTEM: A fire detection system is defined as any type of mechanical device or devices which automatically activates a fire alarm.

5—4—2: MAINTENANCE OF FIRE DETECTION SYSTEMS: The owner, occupant or lessee of a premises containing a fire detection system shall maintain said system in proper working condition.

5—4—3: PRESUMPTION OF IMPROPER WORKING CONDITION: Any fire detection system which activates a fire alarm due to any cause other than smoke or heat shall be presumed not to be in proper working condition.

5—4—4: VIOLATIONS: The Village Fire Chief shall have

authority to file a complaint for and on behalf of the Village of Morton against any owner, occupant, or lessee of a premises containing a fire protection device not maintained in proper working condition.

5—4—5: INSPECTION: In the event a fire detection system is activated, the Village Fire Chief or any party acting in his stead shall have the right to inspect said fire detection system.

5—4—6: PENALTY: Any owner, occupant, or lessee of a premises who fails to maintain a fire protection device or devices in proper working condition shall be fined a minimum of one hundred fifty dollars and a maximum of five hundred dollars.

BE IT FURTHER ORDAINED, that this ordinance shall be in full force and effect upon its passage, approval, and the publication as required by law."

The stipulation may be summarized as follows: The plaintiff operates a long-term sheltered care facility in Morton and at some time prior to October 2, 1978 (the date of the enactment of the ordinance), had caused to be installed a fire detection system. The system was comprised of ionization-type detectors connected to a central panel in plaintiff's establishment with the panel, in turn, being connected to the fire station in the village of Morton. Each detector was mounted in the ceiling and was covered with a plastic cover. At some time prior to October 2, 1978, the system began to trigger false alarms to which the village fire department would respond. Typically the fire chief would consult the central panel, and then proceed to the area which was communicating the alarm where he could find neither smoke nor fire. Upon and after such a finding, the chief would dismantle the detector and would discover that the alarm had been triggered by an insect getting into it, or by a film accumulating on the internal components of the mechanism. In no instance did the chief obtain permission to dismantle and inspect the detector, and likewise in no instance did plaintiff's employee object to such inspection.

The stipulation continued that the village had filed 12 complaints against the plaintiff under the provisions of the ordinance, and intends to continue such filings for other false alarms which may occur. A deposition was taken of an expert who stated that the triggering of the detector by an insect meant that the unit was not in proper working condition. This expert maintained that the ionization-type of detector was wrong for plaintiff's operation. He recommended a sealed unit into which neither insects nor film from disinfectant could penetrate.

It was further stipulated that the village of Morton is not a home-rule municipality within the meaning of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §6), nor has it instituted any proceedings to become one.

The Illinois Constitution of 1970 allows non-home-rule units of local government only the powers granted to them by law and certain other specific powers which are not at issue here. (Ill. Const. 1970, art. VII, §7.) Such units are essentially in the position occupied by all units before the concept of home rule was established by the 1970 Constitution. A statement by the supreme court concerning powers prior to the 1970 Constitution is still applicable to non-home-rule units:

"It is well settled that a city, like all other municipal corporations, derives its existence and its powers from the General Assembly; that it possesses no inherent power; that in order to legislate upon, or with reference to, a particular subject or occupation, it must be able to point to the statute which gives it the power to do so; that statutes granting powers to municipal corporations are strictly construed, and any fair or reasonable doubt of the existence of an asserted power is resolved against the municipality which claims the right to exercise it; that the only implied powers which a municipal corporation possesses and can exercise are those which are necessarily incident to powers expressly granted; and that since a city has no power except by delegation from the General Assembly, in order for it to license or regulate any occupation, the power to do so must be expressly granted or be necessarily implied in, or incident to, other powers which are expressly granted." *Father Basil's Lodge, Inc. v. City of Chicago* (1946), 393 Ill. 246, 252, 65 N.E.2d 805.

The defendant village relies principally on section 11—11—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 11—11—1) as the source of its power to enact the ordinance in question. It is not disputed that no express power to require fire detection devices can be found. However, section 11—1—1 confers no substantive powers. It is an implementing grant which permits enactment of ordinances to carry out powers elsewhere conferred. The supreme court has so stated in unequivocal terms:

"Section 11—1—1 of the Cities and Villages Act, (Ill. Rev. Stat. 1965, chap. 24, par. 11—1—1,) which provides that 'The corporate authorities of each municipality may pass and enforce all necessary police ordinances,' has been construed to confer power to pass and enforce all police ordinances necessary to carry out powers delegated under other provisions of the law. [Citations.]" *Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 539, 224 N.E.2d 793.

■■ It has been fundamental law for many years in this State that a municipality may legislate upon matters only when an express power is granted to it to do so by the legislature and the power is necessarily

implied from the express grant. (*Father Basil's Lodge, Inc.*) This rule has been modified in the case of home-rule units since the adoption of the 1970 Constitution, but, as indicated above, we are not concerned here with that modification. To sustain the ordinance in question there must be found either an express grant or a grant necessarily implied.

Matters relating to fire safety regulation are found in the sections 11—8—1 through 11—8—6 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, pars. 11—8—1 through 11—8—6). Section 11—8—2 reads in part:

> "The corporate authorities also may cause all buildings and enclosures which are in a dangerous fire condition to be put in a safe fire condition * * *."

Courts have gone to great lengths to find implied powers to require the *installation* of fire protective devices, since fire is a most serious concern in congested areas. In *City of Chicago v. Washingtonian Home* (1919), 289 Ill. 206, 124 N.E. 416, the supreme court upheld an ordinance requiring the installation of automatic sprinkler systems under the express powers granted to regulate the construction and maintenance of buildings. Similarly, the court found in the same general class of powers the power to require fire axes, chemical extinguishers and portable hand pumps. (*Williams v. City of Chicago* (1914), 266 Ill. 267, 107 N.E. 599.) The power now found in section 11—8—2 is considerably more specific than those found in *Washingtonian Home* and *Williams*. It therefore follows that if the defendant village here had required the installation of fire detection devices, it would have been on sound ground and the regulatory ordinance would flow naturally from section 11—11—1.

■■ However, this is not the case. There is no ordinance requiring installation, only an ordinance purporting to regulate something not required. It is comparable to appointing a tax collector without levying the tax.

We conclude that the power to regulate can exist only when the object of regulation is mandated by a specific ordinance and that the trial court was correct in finding and adjudicating that the ordinance in question was beyond the power of the defendant village and hence void.

Since the validity of the ordinance may be disposed of on other grounds, ordinarily we would not address the constitutional questions. (*People ex rel. Downs v. Scully* (1951), 408 Ill. 556, 97 N.E.2d 829.) However, the trial court adjudicated the constitutional issues and they have been cross-appealed. We therefore feel compelled to speak, however briefly, on them. They may be summarized as follows: (1) Whether it was constitutional to grant to the fire chief the right to inspect the detectors after determining there was no fire as provided in section 5—4—5 of the ordinance; (2) whether the entire ordinance is unconstitutionally vague; and (3) whether there was an unconstitutional delegation

to the fire chief in permitting him to file complaints as provided in section 5—4—4 of the ordinance. As previously indicated, the trial court resolved all three issues in favor of the defendant village. We do not agree.

■■ The first issue is disposed of by *Michigan v. Tyler* (1978), 436 U.S. .499, 56 L. Ed. 2d 486, 98 S. Ct. 1942. That decision holds that fire is an exigent circumstance which permits entry without a warrant to investigate the cause of the fire. However, subsequent entries are not authorized without a warrant. In applying *Tyler* to the instant set of facts, it is clear that the fire chief may enter the premises to locate a fire and determine its cause. However, when he determines that no fire exists, his authority is at an end and the inspections made by him in the instant case were violations of the fourth amendment to the Constitution of the United States (U.S. Const., amend. IV) and the Constitution of the State of Illinois (Ill. Const. 1970, art. I, §6).

■■ We also find the ordinance constitutionally vague. The test is whether men of ordinary intelligence must guess at its meaning. (S. *Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 284 N.E.2d 257.) In the instant case the experts for each side could not agree when the ionization detector was "in proper working condition." One said that the presence of an insect which triggered the device indicated proper working order. The other maintained that anything which triggered it other than smoke or fire indicated improper working order. If the experts cannot agree, it is beyond comprehension that the ordinary citizen, who may understand the working of an ordinary household toaster, could be placed under quasicriminal penalties for failing to understand the working of an ionization fire detector.

The third issue necessarily depends upon the second, just discussed. If the criteria are vague, no authority can be found to exist in the fire chief to file complaints. We offer no opinion as to such authority if the ordinance did contain sufficient standards.

The judgment of the circuit court of Tazewell County finding the ordinance beyond the powers of the defendant village is affirmed; the same judgment finding in favor of the defendant village on the constitutional issues is reversed.

Affirmed in part and reversed in part.

MILLS, J., concurs.

Mr. JUSTICE GREEN, concurring in part and dissenting in part:

The adjudicatory portion of the judgment on appeal dismissed certain portions of the complaint which plaintiff agreed should be dismissed and then provided:

"That the ordinance which is the subject of this action, being Ordinance No. 1978, is void and unenforceable and Defendant, its officers, agents and employees are hereby enjoined from enforcing said ordinance against Plaintiff."

I agree with the trial court and the majority that the defendant lacked the statutory power to enact the ordinance. For that reason, the judgment should be affirmed. We need not decide whether the trial court might also have made the same adjudication on the basis that the ordinance was unconstitutional. I would not do so.

I am not sure that the trial court's refusal to find the ordinance unconstitutional may be cross-appealed when plaintiff was awarded the requested relief on other grounds. In any event, I deem the affirmance of the matter appealed by defendant to render the cross-appeal moot.

Accordingly, I would dismiss the cross-appeal and affirm as to the appeal.