THE COUNTY OF PEORIA, Plaintiff-Appellee, v. STEPHEN R. CAPITELLI, Defendant-Appellant.

Third District No. 3—85—0278

Opinion filed May 22, 1986.—Rehearing denied July 15, 1986.

Thomas M. Henry, of Henry & Henry, of Peoria, for appellant.

John A. Barra, State's Attorney, and Gary L. Morris, Corporation Counsel, both of Peoria (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

Following a jury trial, the defendant, Stephen R. Capitelli, was convicted of allowing his cat to run at large in violation of an ordinance enacted by the plaintiff, Peoria County. The defendant contends on appeal that: (1) the county as a non-home-rule unit of government lacked the authority to enact the ordinance; (2) attorneys for the city lacked the requisite authority to prosecute violations of the ordinance for the county; and (3) prosecution of county ordinance violations by city attorneys is a conflict of interest and violates the Code of Professional Responsibility. We affirm.

The ordinance in question, section 5—19 of the Peoria County Code, provides in relevant part:

"(a) Every owner of a dog or cat shall contain such animal to the confines of the owner's real property unless the animal is under restraint.

(b) Every owner of a dog or cat is prohibited from allowing said animal to run at large in those unincorporated areas of the county which have been subdivided for residential purposes."

■ The defendant initially argues that this ordinance violated article VII, section 6, of the Illinois Constitution which governs the powers of non-home-rule units. (Ill. Const. 1970, art. VII, sec. 6.) Article VII, section 6, states that a local unit of government which is not a home rule unit can only exercise those powers expressly delegated by the legislature and those that arise by necessary implication from expressly delegated powers. (*Queenwood East Sheltered Care Home, Ltd. v. Village of Morton* (1981), 94 Ill. App. 3d 51, 418 N.E.2d 472.) The defendant asserts that the county ordinance is unconstitutional because the power to regulate cats running at large was not expressly granted by the legislature, and it cannot be implied from other grants of authority provided by the legislature. We find no merit to the defendant's argument.

The counties were given the express power to establish animal pounds and to dispose of stray animals pursuant to the provisions of the Impounding and Disposition of Stray Animals Act, which concerns pet dogs and cats, as well as other animals. (Ill. Rev. Stat. 1985, ch. 111½, par. 128 *et seq.*) The grant of authority to dispose of stray animals provided by section 8 of the Act contains the implied authority to regulate stray animals, including pet dogs and cats, by less drastic means, such as fines, as provided by the Peoria County ordinance in section 5—19.

The Animal Control Act, which deals with stray-animal control, rabies protection, liability for animal bites and related topics, provides

in section 24:

"Nothing in this Act shall be held to limit in any manner the power of any municipality or other political subdivision *to prohibit animals from running at large,* nor shall anything in this Act be construed to, in any manner, limit the power of any municipality or other political subdivision to *further control and regulate dogs, cats* or other animals in such municipality or other political subdivision ***." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 8, par. 374.

The primary consideration in construing a statute is to give effect to legislative intent. (*People v. McCoy* (1976), 63 Ill. 2d 40, 344 N.E.2d 436.) Applying this principle to the instant case, we believe the counties clearly have the express power to impound and dispose of stray animals and the implied authority to further control and regulate dogs, cats and other animals pursuant to the provisions of the Animal Control Act. There is no meaningful reason for a distinction between stray animals and those simply running at large. The authority to regulate and control is based on public health requirements, not upon ownership of any pet or other animal.

■ The defendant's next issue on appeal concerns the representation of the county by city attorneys. The prosecution of the defendant was brought pursuant to an intergovernmental agreement between the County of Peoria and the city of Peoria. Under the terms of this agreement, effective January 1, 1984, city attorneys were appointed assistant State's Attorneys for the purpose of enforcing the Animal Control Act (Ill. Rev. Stat. 1981, ch. 8, par. 351 *et seq.*), and chapter 5 of the Peoria County Code. The defendant maintains that this agreement violated the intergovernmental-cooperation provision of the Illinois Constitution (Ill. Const. 1970, art. VII, sec. 10). The defendant thus argues that city attorneys lacked the authority to prosecute ordinance violations for the county.

We note at this point that two motions were taken with the case. The defendant's motion requests that this court take judicial notice of on-going adversarial litigation between the County of Peoria, represented by the State's Attorney, and the city of Peoria, represented by city attorneys. Although courts of review traditionally do not take judicial notice of pending litigation involving different parties, the motion is allowed in the interest of reaching a full determination of the issue before us. (*People v. Davis* (1976), 65 Ill. 2d 157, 357 N.E.2d 792.) The county, which did not object to the defendant's motion, requests that we take judicial notice of the intergovernmental agreement's adoption by the city council and the county board. This motion

is also allowed as it is well established that reviewing courts may judicially notice matters of public record. *American National Bank & Trust Co. v. City of Chicago* (1971), 4 Ill. App. 3d 127, 280 N.E.2d 567.

■ We disagree with the defendant's contention that the county's intergovernmental agreement violated article VII, section 10 of the Illinois Constitution. Under this constitutional provision, units of local government may share services and combine, transfer or exercise any function or power in conjunction with another unit of local government. (Ill. Const. 1970, art. VII, sec. 10(a).) Sections 10(b) and 10(c) of article VII provide:

"(b) Officers and employees of units of local government *** may participate in intergovernmental activities authorized by their units of government without relinquishing their offices or positions.

(c) The State shall encourage intergovernmental cooperation and use its technical and financial resources to assist intergovernmental activities." (Ill. Const. 1970, art. VII, secs. 10(b), 10(c).)

These various constitutional provisions clearly support the scope and purpose of the county's agreement with the city. We find no evidence of constitutional impropriety in allowing city attorneys to act in their appointed capacity as assistant State's Attorneys. Pursuant to the terms of the Peoria intergovernmental agreement, the attorneys for the city did possess the requisite authority to prosecute the defendant. Such delegations of authority are also permitted under section 745 of the Intergovernmental Cooperation Act (Ill. Rev. Stat. 1983, ch. 127, par. 745). According to this provision, public agencies may contract with each other to perform any governmental service or activity which any agency entering into the contract is authorized by law to perform. This capacity of public agencies to contract and transfer functions thus provides additional support for the Peoria intergovernmental agreement.

■ The defendant also contends that the representation of the county by city attorneys constituted a conflict of interest because the city and the county have an adversarial relationship in other cases. According to the defendant, this conflict impairs the independent and professional judgment of the city attorneys and thus violates the Illinois Code of Professional Responsibility. We again disagree. The mere fact that the county and city are adversaries in other litigation does not establish a conflict of interest. Under the terms of the intergovernmental agreement, the city and the county clearly have the same

interests in enforcing the ordinance. Because this mutuality of interest does exist, the adversarial interests of the city and county in other litigation cannot impose a conflict.

The defendant's reliance upon Rule 5—105 of the Code of Professional Responsibility (87 Ill. 2d R. 5—105) is similarly misplaced. This rule addresses the problem of an attorney representing a client in a matter when the client's interests in that matter may be adverse to the interests of another client. (87 Ill. 2d R. 5—105, Committee Commentary, at 529.) In the instant case, these adverse or conflicting interests do not exist between the city and the county because they share a common purpose in prosecuting ordinance violations. The representation of the county by city attorneys was, therefore, proper.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY, J., concurs.

JUSTICE HEIPLE, dissenting:
I dissent.

The majority states the appropriate standard for assessing the constitutionality of the exercise of powers by a non-home-rule unit. A non-home-rule unit can only exercise those powers expressly delegated by the legislature and those that arise by necessary implication therefrom. *Heidenreich v. Ronske* (1962), 26 Ill. 2d 360.

The majority finds that two separate statutory sections implicitly authorize counties to regulate cats running at large. However, this finding conveniently overlooks the fact that there is an express delegation of authority relative to domestic animals running at large. This provision reads as follows:

> "The county board of each county may regulate and prohibit the running at large of dogs in unincorporated areas of the county which have been subdivided for residential purposes * * *." Ill. Rev. Stat. 1983, ch. 34, par. 427a.

The statute makes no mention of the power to regulate cats. Moreover, there can be no logical implication of authority to regulate cats running at large from the delegation of authority to regulate dogs running at large. If the legislature had intended to delegate such authority, the statute would have read "dogs and cats" or "dogs and other domesticated, four-legged animals." Furthermore, the known propensities of the different species explains the decision to regulate.

one and not the other. Unlike dogs, cats running at large rarely attack or bite without provocation. Cats do not form vicious, destructive packs. Cats are not large enough to overpower small children. Cats seldom damage lawns, shrubbery, and gardens. Hence, the concerns underlying the delegation of authority to counties to keep dogs restrained do not necessarily extend to less harmful animals.

The statutory sections relied upon by the majority are ineffective to imply the power to regulate cats running at large. The statute pertaining to strays is irrelevant. The legislature empowered counties to regulate strays, not animals running at large. While the statute does not define the term "stray," the distinction between strays and at large animals is obvious. A stray either has no owner or the identity of the owner cannot be ascertained. An at large animal is owned or subject to human control, but has temporarily ventured outside his immediate area of restraint. Proof of this distinction is inherent in the instant case; the owner had to be found to be fined. The public health and safety concerns engendered by strays are directly addressed in the Impounding and Disposition of Stray Animals Act (Ill. Rev. Stat. 1983, ch. 111½, par. 128 *et seq.*). There is nothing in that or other statutes which suggests that animals running at large need to be regulated so closely.

The more controversial question is whether the nonlimitation provision of the Animal Control Act carries with it an implication of authority to regulate all domestic animals running at large. Section 24 of the Act states as follows:

> "Nothing in this Act shall be held to limit in any manner the power or any municipality or other political subdivision to prohibit animals from running at large, nor shall anything in this Act be construed to, in any manner, limit the power of any municipality or other political subdivision to further control and regulate dogs, cats or other animals in such municipality or other political subdivision including a requirement of inoculation against rabies." Ill. Rev. Stat. 1983, ch. 8, par. 374.

At first blush, this seems to support the power of the county to prohibit the running at large of cats. Section 24 of the Animal Control Act is not, however, a grant of authority, express or implied. The relevant grant of authority is section 25.17a of "An Act to revise the law in relation to Counties" (Ill. Rev. Stat. 1983, ch. 34, par. 427a). It is simple, direct and unambiguous. The power to regulate dogs running at large is specifically delegated. As I have already noted, this provision does not support an implication of authority to regulate cats running at large. Neither will section 24 support such an implication. If

the powers of non-home-rule units are to be limited to those delegated by legislation, then where there is an express legislative delegation relative to the subject matter to be regulated, only the delegating regulation should be analyzed to determine whether there is implied authority. As such, section 24 cannot serve as a basis for a delegation of implied authority where the actual delegating statute does not allow for such an implication.

Parenthetically, and also worth noting, are the comments of Governor Adlai E. Stevenson which he offered to explain his veto of a 1949 act of the General Assembly that would have barred owners from allowing their cats to run at large:

"I cannot agree that it should be the declared public policy of Illinois that a cat visiting a neighbor's yard or crossing the highway is a public nuisance. It is the nature of cats to do a certain amount of unescorted roaming. Many live with their owners in apartments or other restricted premises, and I doubt if we want to make their every brief foray an opportunity for a small-game hunt by zealous citizens with traps or otherwise.

I am afraid this bill could only create discord, recrimination, and enmity.

Also consider the owner's dilemma: To escort a cat abroad on a leash is against the nature of a cat, and to permit it to venture forth for exercise unattended into a night of new dangers is against the nature of the owner.

Moreover, cats perform useful service, particularly in rural areas, in combatting rodents—work they necessarily perform alone and without regard for property lines.

We are all interested in protecting certain varieties of birds. That cats destroy some birds, I well know, but I believe this legislation would further but little the worthy cause to which its proponents give such unselfish effort. The problem of cat versus bird is as old as time. If we attempt to resolve it by legislation, who knows but what we may be called upon to take sides as well in the age-old problems of dog versus cat, bird versus bird, or even bird versus worm."

The judgment of conviction in this case should be reversed.