ALARM DETECTION SYSTEMS, INC., Plaintiff-Appellant, v. THE VILLAGE OF HINSDALE, Defendant-Appellee.

Second District    No. 2—00—1393

Opinion filed December 12, 2001.

Bruce L. Goldsmith, Debra M. Newton, John A. Lipinsky, and Vincent A. Tessitore, of Rooks, Pitts & Poust, of Lisle, for appellant.

Barbara A. Adams, Peter M. Friedman, and Naomi F. Katz, all of Holland & Knight, L.L.P., of Chicago, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Alarm Detention Systems, Inc. (ADS), appeals from the August 29, 2000, order of the circuit court of Du Page County entering summary judgment on behalf of the defendant, the Village of Hinsdale (the Village), on ADS's complaint for injunctive relief. In its complaint, ADS sought the entry of a permanent injunction preventing the Village from enforcing an ordinance that required all owners of commercial buildings to connect their fire alarm systems directly to the Village's fire board for monitoring. In granting summary judgment, the trial court found that the Village had the authority to enact the ordinance under the provisions of the Illinois Municipal Code (the Code) (65 ILCS 5/1—1—1 *et seq.* (West 1998)). We affirm.

The following facts are relevant to the disposition of this appeal. ADS is state-licensed as a private alarm contractor pursuant to the Private Detective, Private Alarm, Private Security, and Locksmith Act of 1993 (225 ILCS 446/1 *et seq.* (West 1998)). ADS provides fire alarm services to commercial, institutional, and residential customers in over 200 Illinois communities, including Hinsdale. ADS sells and installs fire alarm systems and monitors fire alarm signals at its central monitoring station. ADS has entered into long-term contracts with commercial customers in Hinsdale to provide central station monitoring of their fire alarm systems. ADS's fire alarm systems and its central monitoring station satisfy all the requirements of nationally recognized fire codes.

The Village is a non-home-rule unit of local government that operates its own fire department and fire prevention bureau. The Village also operates a communications center, which includes a fire board that receives alarm signals from certain fire alarm system users in Hinsdale. The Village has entered into an exclusive contract with Security Link/Ameritech to maintain and operate the fire board. Security Link is a competitor of ADS.

Prior to 1999, the Village had adopted various national building and fire prevention codes governing the requirements and use of automatic fire alarm detection systems in certain types of buildings. These codes included the National Building Code of the Building Officials Code Administrators (BOCA). Hinsdale Municipal Code § 9—2—1 (1997). BOCA requires that all fire detection systems be installed in accordance with the requirements of the National Fire Alarm Code drafted by the National Fire Protection Association (NFPA 72). BOCA National Building Code § 919.1 (1996). Pursuant to NFPA 72, all commercial structures that are required to have an automatic fire alarm system must be monitored by either a central monitoring station or a remote station (*e.g.*, a municipal fire board). NFPA National Fire Alarm Code § 5—4.1 (1999).

On March 2, 1999, the Village adopted ordinance No. 99—8, which amended the Village's building code. The ordinance made certain amendments to BOCA's fire alarm system requirements. Specifically, the ordinance amended section 919.4.2 of the BOCA National Building Code (BOCA National Building Code § 919.4.2 (1996)) and required the fire alarm of certain commercial structures to be directly connected to the Village's fire board. The ordinance provided, in relevant part:

> **"919.4.2 Existing Structures:** An automatic fire detection system complying with NFPA 72, 1993 edition, or an automatic fire suppression system complying with NFPA 13, 1994 Edition.

A. in each existing building and structure in Use Group A—1; A—2; A—3; and A—5 ***.

* * *

Each such fire detection system shall be installed and tied directly to the Hinsdale Fire Department Communications Center on or before January 1, 2000. See also Section 904.0 related to fire suppression systems." Hinsdale Municipal Code § 9—2—3 (eff. March 12, 1999).

The ordinance was enacted on the basis of Fire Chief Patrick Kenny's recommendation that direct connection to the fire board would reduce the response time to fire alarms, thereby saving lives and property and promoting firefighter safety. Following the enactment of the ordinance, the Village sent letters to the commercial businesses that would be affected by the new ordinance. The letters informed the businesses that their fire detection systems would have to be directly connected to the Village's fire board by January 1, 2000.

On November 29, 1999, ADS filed a six-count complaint seeking the entry of an order permanently enjoining the Village from enforcing the ordinance. The only counts of the complaint that are relevant to the instant appeal are counts I, II, V, and VI. Count I alleged that the ordinance contravened the safety standards adopted by national building and fire codes and was unlawful because its enactment was beyond the scope of the Village's authority as a non-home-rule municipality. Count II alleged the ordinance was a *de facto* regulation of private alarm contractors that was preempted by the Private Detective, Private Alarm, Private Security, and Locksmith Act of 1993 (225 ILCS 446/1 *et seq.* (West 1998)). Count V alleged that the ordinance was an illegal restraint on trade in violation of the Illinois Antitrust Act (740 ILCS 10/1 *et seq.* (West 1998)). Count VI alleged that the ordinance deprived ADS of its constitutional right to due process under article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2).

The parties subsequently filed cross-motions for summary judgment as to counts I, II, V, and VI of the complaint. On August 29, 2000, following a hearing, the trial court granted the Village's motion for summary judgment and denied ADS's motion for summary judgment. In entering its ruling, the trial court explained that the Code grants municipalities broad powers to enact ordinances for the health, safety, and welfare of the community. The trial court found that the ordinance was clearly germane to the community's health, safety, and welfare as it addressed the fire safety needs of the community as determined by the Village. On November 3, 2000, the trial court made an express written finding that there was no just reason for delaying

the enforcement or appeal of its order. Also on November 3, 2000, ADS voluntarily dismissed the two counts of its complaint that remained pending. This timely appeal followed.

■ Summary judgment is appropriate when the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000). Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the movant is free and clear from doubt. *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 948 (1993). The disposition of a summary judgment motion is not discretionary, and the standard of review is *de novo. Quinton v. Kuffer*, 221 Ill. App. 3d 466, 471 (1991). With these principles in mind, we turn to a consideration of the merits.

ADS's first argument on appeal is that the Village lacked the authority to mandate that all commercial structures be directly connected to its fire board. Specifically, ADS argues that the Village, as a non-home-rule unit of government, lacked the statutory authority to adopt ordinances setting forth fire alarm monitoring requirements for existing and new structures that were inconsistent with BOCA and NFPA 72. Rather, ADS contends that the Village's authority under the Code was limited to adopting by reference either all or part of BOCA and NFPA 72.

■ The Illinois Constitution of 1970 allows non-home-rule units of local government only those powers granted to them by law. Ill. Const. 1970, art. VII, § 7. Such units are essentially in the position occupied by all units of local government before the concept of home rule was established by the 1970 Constitution. *Queenwood East Sheltered Care Home, Ltd. v. Village of Morton*, 94 Ill. App. 3d 51, 54 (1981). In explaining the powers of non-home-rule units of government, our supreme court has explained:

> "It is well settled that a city, like all other municipal corporations, derives its existence and its powers from the General Assembly; that it possesses no inherent power; that in order to legislate upon, or with reference to, a particular subject or occupation, it must be able to point to the statute which gives it the power to do so; that statutes granting powers to municipal corporations are strictly construed, and any fair or reasonable doubt of the existence of an asserted power is resolved against the municipality which claims the right to exercise it ***." *Father Basil's Lodge, Inc. v. City of Chicago*, 393 Ill. 246, 252 (1946).

■ ADS asserts that the only provision of the Code that permits municipalities to regulate the construction and alteration of building structures is section 1—3—2, which provides, in relevant part:

"A municipality may adopt by reference, as criteria for the issuance of construction, reconstruction, alteration, or installation permits, all or part of the provisions of regulations [prepared by a nationally recognized technical trade or service association] without setting forth those provisions in full ***." 65 ILCS 5/1—3—2 (West 1998).

ADS argues that, as a non-home-rule unit of government, the Village's authority to regulate the construction and alteration of building structures is strictly derived from section 1—3—2 of the Code. Because section 1—3—2 grants the power to only adopt "all or part" of nationally recognized regulations, ADS contends that the Village was without the authority to amend, delete, or modify sections of those national codes that it has adopted. Thus, ADS concludes that the Village was without the authority to amend those provisions of BOCA and NFPA 72 that authorize fire alarm monitoring by either a central station or a fire board. ADS also notes that section 1—3—2 only applies to the issuance of building permits and does not permit a municipality to regulate existing structures.

By focusing its attention on section 1—3—2 of the Code, ADS has ignored other sections of the Code that provide the authority for the action taken by the Village in this case. Section 11—30—4 of the Code provides that the corporate authorities of each municipality "may prescribe the strength and manner of constructing all buildings, structures and their accessories and of the construction of fire escapes thereon." 65 ILCS 5/11—30—4 (West 1998). Section 11—8—2 permits the enactment of ordinances to "put in a safe fire condition" all buildings and enclosures. 65 ILCS 5/11—8—2 (West 1998). Illinois courts have consistently held that these grants of authority permit municipalities to regulate both the construction of new buildings and the maintenance of existing buildings in order to protect the lives, health, and property of the public. See *Kaukas v. City of Chicago*, 27 Ill. 2d 197, 200-01 (1963); *City of Chicago v. Washingtonian Home of Chicago*, 289 Ill. 206, 211 (1919).

In *Washingtonian*, our supreme court held that a municipality had the authority to enact a fire prevention ordinance requiring all hospitals, nursing homes, jails, and police stations to install an automatic sprinkler system. *Washingtonian*, 289 Ill. at 217. In reliance upon an earlier version of section 11—30—4 of the Code, the court explained that a municipality has the right to enact reasonable regulations for the protection of the lives and the safety of its citizens and to protect property against destruction by fire. *Washingtonian*, 289 Ill. at 211-12. Noting that the rights of the individual may occasionally be intruded upon in order to protect the welfare and safety

of the public, the court held that a municipality may enact ordinances to protect the public safety and welfare even though such ordinances may result in inconvenience or monetary loss to individuals. *Washingtonian*, 289 Ill. at 212.

A number of years later, in *Kaukas v. City of Chicago*, 27 Ill. 2d 197 (1963), our supreme court reaffirmed the principle that municipalities may lawfully enact new building code requirements that can be retroactively applied to buildings already in existence. In that case, a municipality enacted an ordinance prohibiting the use of glass panel doors as fire exits in all new and existing buildings. *Kaukas*, 27 Ill. 2d at 199. The owner of an existing building filed a suit for declaratory judgment arguing that the ordinance, when applied to existing buildings, deprived the property owner of due process of law and constituted a taking of the owner's property without just compensation. *Kaukas*, 27 Ill. 2d at 199-200.

Explaining that a municipality had the authority to prescribe the strength of buildings and to cause all buildings to be placed in a safe fire condition (Ill. Rev. Stat. 1959, ch. 24, pars. 23—70, 23—72 (now 65 ILCS 5/11—8—2, 11—30—4 (West 1998))), the supreme court held that the municipality could lawfully enact building requirements that retroactively applied to existing buildings. *Kaukas*, 27 Ill. 2d at 200-01. The court noted that the only limitation on this power arises when the burden imposed on the owner of the property to comply with the ordinance is too great in comparison to the public benefit that the ordinance provides. *Kaukas*, 27 Ill. 2d at 201. After reviewing the evidence in the case, the court concluded that the municipality had a reasonable basis to determine that public safety required that the ordinance be applied to existing buildings. *Kaukas*, 27 Ill. 2d at 201. The court also determined that the cost of compliance would not cause such undue hardship to property owners so as to result in a violation of due process or an unconstitutional taking of property without compensation. *Kaukas*, 27 Ill. 2d at 203; see also *City of Chicago v. Franks*, 15 Ill. App. 2d 189, 192-93 (1957) (municipality has broad authority under the Code to regulate the construction and maintenance of buildings to promote the welfare and safety of the community).

In light of these authorities, we reject ADS's assertions that section 1—3—2 of the Code restricts a municipality to enacting only those rules and regulations promulgated by nationally recognized trade associations. Indeed, section 1—3—2 contains no language that would prohibit a municipality from drafting and enacting its own building and fire codes. We believe that such a conclusion would be contrary to the purpose of the Code as articulated in both *Kaukas* and

*Washingtonian*. Rather, we hold that a municipality has the authority under sections 11—8—2 and 11—30—4 of the Code to amend national building or fire codes or draft its own codes as it determines is necessary in order to protect the public safety and welfare. *Kaukas*, 27 Ill. 2d at 201. We agree with the Village that section 1—3—2 of the Code was intended merely as a tool of convenience to permit municipalities to adopt national codes by reference without having to reprint the entire text of the adopted codes in the local municipal code.

■ Accordingly, we conclude that the trial court correctly determined that the Village had the authority under the Code to enact the instant ordinance requiring that all fire alarm systems in new and existing commercial buildings be tied directly to the Village's fire board. As noted in *Kaukas*, the public has a right to be protected from fire, and a municipality has the duty to provide such protection. *Kaukas*, 27 Ill. 2d at 201. Based upon our review of the evidence in the instant case, there existed a reasonable basis for the determination by the Village that public safety required the application of this ordinance to existing buildings. The affidavits and depositions filed in support of the parties' motions for summary judgment indicate that the direct connection of a fire alarm system to the Village's fire board allows for a faster response time than if an alarm system is monitored by a private alarm company. Even ADS acknowledges that private central station monitoring adds anywhere from 15 to 40 seconds to fire alarm response times. Such a delay can provide sufficient time for a small fire to grow into a larger and more dangerous fire.

As there exists a reasonable public safety rationale to support the enactment of the ordinance, the only remaining question is whether the burden that the ordinance places upon private property owners is too great. *Kaukas*, 27 Ill. 2d at 201. We note that ADS is not the owner of any property in Hinsdale and there has been no allegation or evidence that the ordinance places too great a burden on property owners there. We also note that, prior to the enactment of the instant ordinance, the Village's ordinances already required that the owners of commercial buildings install fire alarm systems connected to either a central monitoring system or the Village's fire board. We do not believe that property owners who have fire alarm systems that are currently connected to a central monitoring system will suffer too great a burden in having their systems changed to the Village's fire board. Indeed, the contract entered into between the Village and Security Link provides for a connection fee of only $150. Accordingly, we hold that Village's enactment of the instant ordinance was a lawful exercise of its authority under the Code.

In so holding, we note that the authorities relied upon by ADS are

distinguishable from the case at bar. Both *Wilkes v. Deerfield-Bannockburn Fire Protection District*, 80 Ill. App. 3d 327, 333-35 (1979), and *Glenview Rural Fire Protection District v. Raymond*, 19 Ill. App. 3d 272, 274-76 (1974), concern the powers of fire protection districts to enact building codes and provide ambulance service. Fire protection districts are not governed by the provisions of the Code and are completely separate legal entities from municipalities. *Raymond*, 19 Ill. App. 3d at 277. Accordingly, these cases are of no import in determining the authority of municipalities.

We also believe that the facts of *Queenwood East Sheltered Care Home, Ltd. v. Village of Morton*, 94 Ill. App. 3d 51, 54 (1981), are distinguishable. In that case, the court invalidated a municipal ordinance regulating the maintenance of fire protection devices. *Queenwood*, 94 Ill. App. 3d at 55. However, contrary to ADS's representations, the court did not invalidate the ordinance because the municipality lacked the authority to enact such an ordinance under the Code. Rather, the court held that the municipality could not enact such an ordinance when there was no preexisting ordinance requiring the installation of fire protection devices in the first instance. *Queenwood*, 94 Ill. App. 3d at 55. Thus, *Queenwood* does not affect our determination that the Village was authorized under the Code to enact the instant ordinance.

ADS's next argument on appeal is that the Village's enactment of the ordinance violated its right to due process under the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Although ADS acknowledges that fire safety is a legitimate governmental interest, it argues that the ordinance is an unreasonable method of achieving fire safety, as it disregards the BOCA and NFPA 72 standards for fire alarm monitoring. ADS argues that the ordinance is arbitrary and capricious and impermissibly interferes with ADS's property and liberty interest in pursuing its chosen trade and business.

■ It is a well-established constitutional principle that every citizen has the right to pursue a trade, occupation, business, or profession. *Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton*, 105 Ill. 2d 389, 397 (1985). This right constitutes both a property and liberty interest entitled to the protection of the law as guaranteed by the due process clauses of the state and federal constitutions. *Rios v. Jones*, 63 Ill. 2d 488, 496-97 (1976). Nevertheless, this constitutionally protected right is limited by the right of the state to regulate, through the proper exercise of police power, where the public health, safety, or welfare so require. *Clayton*, 105 Ill. 2d at 397. Where the governmental regulation at issue does not affect fundamental rights, the constitution requires only that the statute be "rationally related" to a legitimate state interest. *Clayton*, 105 Ill. 2d at 398.

As already noted, ADS does not dispute that fire safety is a legitimate governmental interest. However, ADS argues that the instant ordinance is not rationally related to fire safety because it is inconsistent with the codes and standards promulgated by BOCA, NFPA 72, and Underwriters Laboratories. All of these national codes authorize the use of a central station to monitor fire alarm systems. ADS argues that the Village has provided no rational basis for rejecting central station monitoring as a primary means of monitoring.

■ For many of the same reasons discussed above, we believe that the ordinance is rationally related to the legitimate governmental interest of fire safety. As noted earlier, the evidence appearing in the record demonstrates that the connection to the Village's fire board allows for a quicker response time of up to 40 seconds. Chief Kenny testified that a quicker response time will result in fewer fire-related injuries and less property damage. In light of such evidence, we believe that the ordinance is rationally related to achieve its objective of increased fire safety to the community.

We also do not believe that the ordinance is unreasonable because it adopts a stricter standard than that contained in BOCA or NFPA 72. We are aware of no legal authority that would prevent the Village from adopting stricter building and fire code standards than those contained in national codes and regulations. By choosing to adopt a stricter monitoring standard for fire alarm systems, the Village obviously determined that alarm connections to its fire board would provide a quicker response time than those alarm systems connected to a central monitoring system. Based upon the record before us, we do not believe that the Village's determination was arbitrary or unreasonable and we therefore conclude that there has been no due process violation.

ADS's next argument on appeal is that the Village was preempted from enacting the instant ordinance by the Private Detective, Private Alarm, Private Security, and Locksmith Act of 1993 (the Alarm Act) (225 ILCS 446/1 *et seq.* (West 1998)). ADS argues that, under section 40 of the Alarm Act, the power to regulate private alarm companies is the exclusive province of the General Assembly. ADS argues that the ordinance in the instant case is a *de facto* regulation of fire alarm companies and is prohibited under the Alarm Act.

■ In enacting the Alarm Act, the General Assembly expressed its belief that the public health, safety, and welfare required the licensing and regulation of detectives, private alarm companies, private security companies, and locksmiths. 225 ILCS 446/10 (West 1998). The legislature also expressed the need for individuals with expertise in these areas to be charged with the responsibility of regulating those

licensed under the Act. 225 ILCS 446/55 (West 1998). To effectuate this intent, section 40 of the Alarm Act provides that the regulation of these businesses falls within the exclusive authority of the state. Section 40 provides as follows:

"Pursuant to paragraph (h) of Section 6 of Article VII of the Illinois Constitution of 1970, the power to regulate the private detective, private security, private alarm, or locksmith business shall be exercised exclusively by the State and may not be exercised by any unit of local government, including home rule units." 225 ILCS 446/40 (West 1998).

In reliance upon this provision, Illinois courts have held that municipalities are without the authority to enact ordinances that create additional licensing requirements or regulations upon private detectives, private alarm companies, private security companies, or locksmiths. See *United Private Detective & Security Ass'n v. City of Chicago*, 62 Ill. 2d 506 (1976) (municipality without authority to enact concurrent licensing requirements for private detectives); *City of Chicago v. Haworth*, 303 Ill. App. 3d 451 (1999) (municipal ordinance requiring private detectives to register their firearms and pay a licensing fee was preempted by section 40 of the Alarm Act).

■ Unlike *United Private Detective* and *Haworth*, this case does not involve an ordinance that imposes licensing or regulatory requirements upon a business that is licensed under the Alarm Act. Indeed, the ordinance here is not even directed at alarm system providers. Rather, the ordinance imposes certain fire alarm requirements upon the owners of commercial buildings as part of the Village's building code. As the ordinance does not seek to regulate private alarm contractors, we conclude that it is not preempted by section 40 of the Alarm Act.

ADS asserts that the ordinance was a *de facto* regulation on fire alarm companies as it "prohibits" the use of central system alarm monitoring and therefore prevents ADS from seeking future alarm monitoring business in the Village. However, such an argument is not supported by the language contained in the ordinance. There is no language that prevents central station monitoring or prohibits the owners of commercial structures from connecting their alarm systems to a central monitoring system. Although the ordinance may have an impact on ADS's business in the Village, we note that municipal enactments often have a secondary impact upon the business community. *Greyhound Lines, Inc. v. City of Chicago*, 24 Ill. App. 3d 718, 732 (1974) (upholding ordinance banning pay toilets against challenge brought by suppliers of coin locks used on lavatories). Illinois courts have held that the right of an individual to conduct business in a

certain way is subordinate to the interests of public safety and welfare. *Greyhound Lines*, 24 Ill. App. 3d at 732. Based upon our review of the ordinance, we conclude that it was not an illegal attempt to regulate the private alarm industry, but was instead a lawful exercise of those powers granted to the Village under the Code.

ADS next argues that the ordinance constitutes an unlawful restraint of trade and an illegal exercise of monopoly power in violation of the Illinois Antitrust Act (the Antitrust Act) (740 ILCS 10/1 *et seq.* (West 1998)). ADS argues that the Village has contracted with Security Link to install and maintain its fire board monitoring system. As part of this agreement, each entity that is connected to the fire board must pay Security Link a $150 connection fee and monthly monitoring fees of $18. ADS argues that the ordinance creates a monopoly on behalf of Security Link by controlling the means of monitoring commercial fire alarm systems.

■ The purpose of the Antitrust Act is to promote the unhampered growth of commerce and industry through the prohibition of restraints of trade that are secured through monopolistic or oligarchic practices and that act to decrease competition between persons engaged in commerce and trade. 740 ILCS 10/2 (West 1998). The Antitrust Act prohibits any person from entering into contracts with one or more persons that unreasonably restrain trade or commerce. 740 ILCS 10/3(2), (3) (West 1998). However, under section 5(15) of the Antitrust Act, the activities of a unit of local government are specifically exempted from the statutory scheme. That section provides as follows:
    "No provisions of this Act shall be construed to make illegal:

* * *

    (15) the activities of a unit of local government or school district and the activities of the employees, agents and officers of a unit of local government or school district." 740 ILCS 10/5(15) (West 1998).
Additionally, section 11 further provides that the Antitrust Act "shall not be construed to restrict the exercise by units of local government or school districts of powers granted, either expressly or by necessary implication, by Illinois statute or the Illinois Constitution." 740 ILCS 10/11 (West 1998).

■ The Village is clearly a unit of local government within the meaning of sections 5(15) and 11. Therefore, under the plain language of these sections, the Village's activity of enacting a municipal ordinance is not restricted by the provisions of the Antitrust Act. These statutory provisions contain no exceptions and we see no reason not to give effect to their plain meaning. See *Du Page Aviation Corp., Flight Services, Inc. v. Du Page Airport Authority*, 229 Ill. App. 3d 793,

802 (1992) (municipal airport authority was a "unit of local government" immune from liability under the Antitrust Act).

ADS argues that these immunities do not apply to the instant case because the Village was not acting within the scope of its authority in enacting the ordinance. However, in light of our determination that the Village had the authority to enact the ordinance under the provisions of the Code, this argument must also fail. We also decline ADS's invitation to consider the facts of this case under the "state action" doctrine, which is applied in federal antitrust cases to determine the immunity of local municipalities. See *Wellwoods Development Co. v. City of Aurora*, 631 F. Supp. 221, 223-26 (N.D. Ill. 1986). ADS's complaint is predicated upon state law and does not allege violations of federal law. Accordingly, we see no reason to go beyond the plain language of the Antitrust Act in determining whether the Village was immune from liability. Giving effect to that plain language, we conclude that the Village was immune from any liability under the Antitrust Act.

ADS's final argument on appeal is that the ordinance is an unconstitutional infringement upon its right to contract. See U.S. Const., art. I, § 10; Ill. Const. 1970, art. I, § 16. ADS argues that the Village may impair its contractual rights only if such an impairment is necessary to secure fire safety. ADS argues that, because central system monitoring of fire alarms is acceptable under either BOCA or NFPA 72, the ordinance requiring that all commercial structures be connected to the Village's fire board is unnecessary.

A review of the record demonstrates that the defendant did not raise this constitutional argument before the trial court. Constitutional issues not presented to the trial court are deemed waived and may not be raised for the first time on appeal. *Villareal v. Peebles*, 299 Ill. App. 3d 556, 560 (1998). However, even if ADS had not waived this issue, we would nonetheless find that the Village's enactment of the ordinance did not unconstitutionally infringe upon ADS's right to contract. Illinois courts have consistently held that an individual's right to conduct business is subordinate to the interests of the public welfare. See *Greyhound Lines*, 24 Ill. App. 3d at 732; see also *City of Decatur v. Chasteen*, 19 Ill. 2d 204, 211 (1960). A municipality may enact legislation that affects the right to contract where it is reasonably necessary to secure the health, safety, and general welfare of the community. *Memorial Gardens Ass'n v. Smith*, 16 Ill. 2d 116, 128 (1959). As detailed above, we believe that the ordinance's enactment was a reasonable legislative judgment tailored toward the improvement of the public welfare and safety. Accordingly, we do not believe that the ordinance unconstitutionally infringes upon ADS's right to contract.

Therefore, we hold that the trial court properly granted the Village's motion for summary judgment and denied ADS's cross-motion for summary judgment.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and CALLUM, JJ., concur.