DU PAGE AVIATION CORPORATION, FLIGHT SERVICES, INC., *et al.*, Plaintiffs-Appellants, v. DU PAGE AIRPORT AUTHORITY, Defendant-Appellee.

Second District Nos. 2—91—0112, 2—91—0386 cons.

Opinion filed June 5, 1992.

Maureen A. Hill, of Clancy & Krippner, of St. Charles (Wendell W. Clancy, of counsel), for appellants.

Bell, Boyd & Lloyd, of Chicago (Lawrence M. Gavin, of counsel), for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Du Page Aviation Corporation, Flight Services, Inc., S S P F (a partnership), Chicago Beechcraft (a limited partnership) and Joe Boyd (plaintiffs) appeal after the trial court dismissed with prejudice all counts of their amended complaint and second amended complaint against the Du Page Airport Authority (Authority), defendant. Plaintiffs sued the Authority in February 1989 for damages that allegedly are based on the expiration of plaintiffs' property leases at the airport. Plaintiffs wanted fair-market value compensation for certain improvements they made on the leased property instead of depreciated value compensation that the leases provided, and the Authority allegedly refused to renegotiate the leases. We affirm.

We set forth only the relevant facts to the issues raised. On February 14, 1989, plaintiffs filed a three-count complaint against defendant. Count I was based in estoppel theory, count II alleged a conspiracy, and count III alleged tortious interference with business contracts. Plaintiffs later added count IV, which sought to enjoin the Authority from exercising an option to terminate plaintiffs' leases. On January 19, 1990, the trial court granted the Authority's section 2—615 motion to dismiss (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). The court specifically dismissed counts II, III, and IV, and allowed plaintiffs leave to file an amended complaint which would include count I.

On February 15, 1990, plaintiffs filed a four-count amended complaint: count I was based in estoppel theory, count II alleged a conspiracy to restrain trade, count III alleged tortious interference with business relationships, and count IV alleged violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1989, ch. 121½, pars. 261 through 272).

On October 9, 1990, the trial court dismissed count I with prejudice pursuant to section 2—619 (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) and dismissed counts II, III and IV with prejudice pursuant to section 2—615 (Ill. Rev. Stat. 1989, ch. 110, par. 2—615).

In granting the Authority's motion to dismiss count I, the estoppel count, the court held that the leases were clear and unambiguous and that they provided a formula for compensating the plaintiffs for leasehold improvements when the leases expired. The court further held that plaintiffs' complaint failed to state a cause of action in

estoppel since plaintiffs did not allege detrimental reliance or that defendant broke a promise to plaintiffs. The court dismissed count II of the amended complaint, the antitrust count, on the grounds that the Authority was immune from liability under section 5(14) of the Illinois Antitrust Act (Ill. Rev. Stat. 1989, ch. 38, par. 60—5(14)) and the State action doctrine (citing *Wellwoods Development Co. v. City of Aurora* (N.D. Ill. 1986), 631 F. Supp. 221, 224-25, *aff'd* (7th Cir. 1987), 822 F.2d 1091). The court dismissed count III of the amended complaint, the tortious interference count, on the ground that the Authority was immune under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*). The court dismissed count IV of the amended complaint, the Consumer Fraud Act count, because the Authority was not subject to the Act, citing *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, and also on immunity grounds.

On December 20, 1990, the trial court granted plaintiffs' section 2—1301 motion to vacate (Ill. Rev. Stat. 1989, ch. 110, par. 2—1301) in part the October 9 order. The court entered an order which modified the dismissal of count I of the amended complaint to *without prejudice* and denied the motion to vacate in all other respects. The court also added final and appealable language of Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) to the earlier dismissal of counts II, III and IV and granted plaintiffs leave to file a second amended complaint *instanter*. Plaintiffs' second amended complaint consisted of two counts. Count I sounded in estoppel theory. Count II alleged that defendant had violated the Eminent Domain Act (Ill. Rev. Stat. 1989, ch. 110, pars. 7—101 through 7—129), thereby depriving plaintiffs of property in violation of section 1983 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (1988)). Plaintiffs did not reallege or preserve counts II, III and IV from the amended complaint in their second amended complaint.

On January 22, 1991, plaintiffs filed a timely notice of appeal as to the December 20, 1990, order.

On March 7, 1991, the trial court granted defendant's section 2—619 motion to dismiss (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) plaintiffs' second amended complaint. On April 4, 1991, plaintiffs filed a timely notice of appeal as to the March 7, 1991, order. Finally, on April 10, 1991, this court granted plaintiffs' motion to consolidate the two appeals.

Plaintiffs raise seven issues on appeal, all regarding whether the trial court erred in dismissing the various counts in their complaints. Specifically, plaintiffs argue that: (1) count II of the amended com-

plaint sufficiently stated a cause of action under the Illinois Antitrust Act; (2) count III of the amended complaint sufficiently stated a cause of action for tortious interference with prospective advantage; (3) count IV of the amended complaint sufficiently stated a cause of action under the Consumer Fraud Act; (4) the Tort Immunity Act does not immunize the Authority from liability; (5) the amended and second amended complaints comply with the applicable statutes of limitation; (6) count I of the second amended complaint sufficiently stated a cause of action in estoppel theory; and (7) count II of the second amended complaint sufficiently stated a cause of action under section 1983 (42 U.S.C. §1983 (1988)).

The Authority responds that this court lacks jurisdiction to consider the October 9, 1990, order dismissing counts II, III and IV of plaintiffs' amended complaint because plaintiffs' notice of appeal referred only to the later December 20, 1990, order. In the alternative, the Authority urges this court to conclude that plaintiffs waived any objection to the dismissal of counts II, III and IV of the amended complaint by filing their second amended complaint. The Authority finally argues that even if this court has jurisdiction to review the issues raised and if we find no waiver, the trial court properly dismissed all counts of plaintiffs' complaints.

### DOES THIS COURT HAVE JURISDICTION TO REVIEW THE OCTOBER 9, 1990, ORDER?

■ We disagree with the Authority's contention that this court is without jurisdiction to review the October 9 order. We begin by noting that Supreme Court Rule 303(c)(2) states:

"(c) Form and Contents of Notice of Appeal.

\* \* \*

(2) It shall specify the judgment or part thereof appealed from and the relief sought from the reviewing court." (134 Ill. 2d R. 303(c)(2).)

The Illinois Supreme Court held in *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, that a notice of appeal need not specify a particular order to confer jurisdiction if the order specified in the notice of appeal directly relates back to the judgment or order sought to be reviewed. (*Burtell*, 76 Ill. 2d at 434.) "[T]he unspecified judgment is reviewable if it is a 'step in the procedural progression leading' to the judgment specified in the notice of appeal." (*Burtell*, 76 Ill. 2d at 435, quoting *Elfman Motors, Inc. v. Chrysler Corp.* (3d Cir. 1977), 567 F.2d 1252, 1254.) In *Burtell*, the supreme court held that the notice of appeal at issue was sufficient to confer jurisdiction because the

earlier order sought to be reviewed, but which was not mentioned in the notice of appeal, was an order for an accounting. The court noted that the notice of appeal referred to the final judgment, which was based on the accounting. *Burtell*, 76 Ill. 2d at 431-36. But see *Village of Lisle v. Village of Woodridge* (1989), 192 Ill. App. 3d 568, 572 (appellate court without jurisdiction to consider any issues raised regarding a dismissal order because the notice of appeal referred only to a later summary judgment order and requested relief from that order only).

In the instant case, the trial court's December 20, 1990, order specifically added final and appealable language from Rule 304(a) (134 Ill. 2d R. 304(a)) to its earlier order of October 9, 1990, dismissing counts II, III and IV. We conclude that the October 9, 1990, order is a step in the procedural progression leading to the December 20, 1990, order and that therefore the October 9, 1990, order is properly before this court.

### DID PLAINTIFFS WAIVE OBJECTION TO THE DISMISSAL OF THE AMENDED COMPLAINT BY FILING A SECOND AMENDED COMPLAINT?

At issue is whether plaintiffs waived any objection to the dismissal of counts II, III and IV of their amended complaint, even though the trial court made the dismissal final and appealable under Rule 304(a), by later filing a second amended complaint. It is well established in Illinois that "a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints." (*Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 153; see *Perkins v. Collette* (1989), 179 Ill. App. 3d 852, 856.) In *Foxcroft*, our supreme court stated that " '[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.' " (*Foxcroft*, 96 Ill. 2d at 154, quoting *Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 272.) The court further stated:

> "There are significant policy considerations which favor adherence to this general rule. In particular is the interest in the efficient and orderly administration of justice. It is expected that a cause will proceed to trial on the claims as set forth in the final amended complaint." (*Foxcroft*, 96 Ill. 2d at 154.)

The court concluded that "we perceive no undue burden in requiring a party to incorporate in its final pleading all allegations which it desires to preserve for trial or review." *Foxcroft*, 96 Ill. 2d at 154.

■ Plaintiffs argue that they adequately preserved the dismissal of counts II, III and IV of their amended complaint by obtaining Rule 304(a) findings as to those counts from the trial court. We disagree. The import of *Foxcroft* is that plaintiffs in the instant case had two choices to preserve the counts at issue for appellate review. First, they could have elected to stand on the dismissed counts and argue such at the appellate level, *prior* to filing their second amended complaint. Alternatively, they could have realleged or preserved the dismissed counts in their second amended complaint. Plaintiffs did neither and have therefore waived this court's consideration of the trial court's dismissal of counts II, III and IV of their amended complaint.

' Even if we were to conclude that plaintiffs' filing of a second amended complaint did not constitute a waiver, we find no error by the trial court. Because we are reviewing the trial court's orders dismissing all counts in plaintiffs' amended and second amended complaints, we must accept all well-pleaded facts as true. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 514.) Our quest is to determine the "legal sufficiency of the complaint." (*Kirk*, 117 Ill. 2d at 516.) While "[p]leadings are to be liberally construed with a view to doing justice between the parties [citations], *** that does not lessen the obligation of the plaintiff to set out facts necessary for recovery under the theory asserted in the complaint." (*Kirk*, 117 Ill. 2d at 516; see *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 287.) Pursuant to these rules, we will review the trial court's dismissal of each count in plaintiffs' amended complaint and second amended complaint.

## ANTITRUST COUNT

Count II of plaintiffs' amended complaint alleged that the Authority conspired to restrain trade in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1989, ch. 38, pars. 60—1 through 60—11). The trial court dismissed count II on the grounds that the Authority was immune from liability under the Antitrust Act and the State action doctrine.

Plaintiffs argue that section 5(14) of the Antitrust Act (Ill. Rev. Stat. 1989, ch. 38, par. 60—5(14)), on which the trial court relied to dismiss the count, does not apply because the Authority is not a "unit of local government." Plaintiffs further argue that the State action antitrust immunity doctrine, also relied on by the trial court, does not apply to the instant case. On that latter point, plaintiffs distinguish *Wellwoods Development Co. v. City of Aurora* (N.D. Ill. 1986), 631 F. Supp. 221, *aff'd* (7th Cir. 1987), 822 F.2d 1091, a strikingly similar

case on which the trial court relied, as involving an antitrust claim against a municipality rather than an airport authority. Plaintiffs also argue that the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*) does not apply to the instant case. Lastly, plaintiffs argue that count II sufficiently alleged the essential elements of an antitrust claim.

The Authority responds that the trial court properly dismissed count II of the amended complaint for three reasons. First, the Authority argues that under section 5(14) of the Antitrust Act, the Authority is a "local unit of government" and the Act therefore does not apply. The Authority refers this court to section 1 of article VII of the Illinois Constitution, which states in pertinent part:

> " 'Units of local government' means counties, municipalities, townships, special districts, and units, designated as units of local government by law, which exercise limited governmental powers or powers in respect to limited governmental subjects, but does not include school districts." (Ill. Const. 1970, art. VII, §1.)

The Authority also invokes *Chicago Transit Authority v. Danaher* (1976), 40 Ill. App. 3d 913, where the court concluded that the Chicago Transit Authority and the Chicago Housing Authority were both "units of local government" in that they were both "special districts" within the meaning of the above section of the Illinois Constitution. *Danaher*, 40 Ill. App. 3d at 915-17.

Second, the Authority argues that it is immune from liability under the State action doctrine, which protects States and municipalities from antitrust liability (see *Town of Hallie v. City of Eau Claire* (1985), 471 U.S. 34, 39, 85 L. Ed. 2d 24, 29-30, 105 S. Ct. 1713, 1716-17), as well as under the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*). The Authority argues that this court should follow the reasoning and holding of the court in *Wellwoods Development Co.* The court there dismissed plaintiff's antitrust claim against the defendant municipal airport authority, concluding that the two criteria for application of the State action doctrine were met: (1) that a legislative act authorized the challenged conduct; and (2) that anticompetitive effects were a foreseeable result of the authorization. (*Wellwoods Development Co.*, 631 F. Supp. at 224-25.) The Authority also argues that it is immune from liability for refusing to extend plaintiffs' leases or to enter into various contracts with plaintiffs under the Tort Immunity Act, specifically citing to sections 2—104, 2—109 and 2—201 (Ill. Rev. Stat. 1989, ch. 85, pars. 2—104, 2—109, 2—201).

Lastly, the Authority argues that the allegations in count II of plaintiffs' amended complaint are vague, conclusory and fail to allege the essential elements of an antitrust claim. The Authority cites *Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, for the proposition that an antitrust claim must allege factual allegations of an illegal agreement including "when, how or what the defendants agreed to do" (*Adkins*, 129 Ill. 2d at 521), which they argue plaintiffs have failed to do. The Authority cites *Coffey v. MacKay* (1972), 2 Ill. App. 3d 802, for the proposition that a mere refusal to deal, as they contend is the case here, does not constitute an antitrust violation. (*Coffey*, 2 Ill. App. 3d at 810.) Finally, the Authority argues that this count should be dismissed because the amended complaint fails to allege facts demonstrating that competition has been unreasonably restrained, citing *Adkins* (129 Ill. 2d at 521-22).

■ We agree with the trial court's determination that the Authority was immune from liability under section 5(14) of the Antitrust Act, which provides:

"No provisions of this Act shall be construed to make illegal:

\* \* \*

(14) the activities of a unit of local government or school district and the activities of the employees, agents and officers of a unit of local government or school district." (Ill. Rev. Stat. 1989, ch. 38, par. 60—5(14).)

The Authority is plainly a "unit of local government" within the meaning of that section (see Ill. Const. 1970, art. VII, §1 (defining "units of local government"); *Danaher*, 40 Ill. App. 3d at 915-17 (court held that the Chicago Transit Authority and the Chicago Housing Authority were "units of local government")).

■ We also agree with the trial court that the Authority is immune from liability under the State action antitrust immunity doctrine. We believe that *Wellwoods Development Co.* is squarely on point and controlling in that regard. The instant case and *Wellwoods Development Co.* are remarkably similar in that in both a municipal airport authority was sued under an antitrust theory. Plaintiffs' argument that in *Wellwoods Development Co.* a municipality, rather than an airport authority, was sued is really a distinction without a difference. The two-part test for application of the State action immunity doctrine set out by the *Wellwoods Development Co.* court is met in the instant case: (1) a legislative act authorized the Authority to contract with parties (see Ill. Rev. Stat. 1989, ch. 15½, par. 68.8—03 (allowing a municipal airport authority to enter into contracts)); and (2) the anticompetitive effects of allowing the Authority to contract with par-

ties was a foreseeable result of the legislative authorization. See *Wellwoods Development Co.*, 631 F. Supp. at 225 (when the legislature allows a municipal corporation to enter into contracts, there will be some contracts that the municipal corporation will choose not to enter into, a foreseeable result that could be characterized as anticompetitive).

Having found ample support for the trial court's dismissal of count II of plaintiffs' amended complaint, we need not consider the alternative arguments raised by the Authority.

### TORTIOUS INTERFERENCE COUNT

Count III of plaintiffs' amended complaint alleged that the Authority engaged in tortious interference with plaintiffs' business. The trial court dismissed count III on the ground that the Authority was immune from liability under the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, pars. 2–104, 2–109, 2–201).

■ This court has stated that the requisite elements for a tortious interference with business claim are: "(1) plaintiff has a valid business expectancy; (2) defendant has knowledge of the expectancy; (3) defendant intentionally interferes with the prospective business relationship and prevents its realization; and (4) resultant damage to plaintiff." *Madonna v. Giacobbe* (1989), 190 Ill. App. 3d 859, 867; see *Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 510-13.

Plaintiffs summarily argue that count III sufficiently states a cause of action for tortious interference. The Authority responds that count III failed to state a *prima facie* case because it did not allege the existence of a contract or a business relationship with a third party which plaintiffs are seeking to protect, and also because count III failed to allege interference. While the Authority also argues other reasons to affirm the trial court's dismissal of count III, we need not discuss them since we agree that plaintiffs have failed to allege a *prima facie* case for tortious interference.

■ Illinois courts have stated that the first element of a *prima facie* case for tortious interference, that plaintiff had a valid business expectancy, requires allegations of business relationships with *specific third parties*. (*Suhadolnik v. City of Springfield* (1989), 184 Ill. App. 3d 155, 184; *Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400, 402-03.) In the instant case, rather than alleging business relationships with specific third parties, count III alleges in general and conclusory terms that "plaintiffs were continually negotiating and entering into business relationships with others." Such is in-

sufficient and by itself would have been fatal to count III at the dismissal stage.

Yet count III is also lacking another element of a *prima facie* case for tortious interference, that of *interference* by the Authority toward a third party. While plaintiffs seek to hold the Authority liable for refusing to enter into leases or contracts with them, claiming that the refusal interfered with plaintiffs' ability to continue dealing with their own customers, we find such allegations insufficient. Illinois courts require that a tortious interference claim be supported by allegations that the defendant acted toward a third party. (*Willcutts v. Galesburg Clinic Association* (1990), 201 Ill. App. 3d 847, 851; *Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 607; *Parkway Bank & Trust*, 43 Ill. App. 3d at 402-03.) We find no such allegations within the four corners of plaintiffs' amended complaint.

We conclude that count III of plaintiffs' amended complaint failed to state a cause of action for tortious interference. We therefore hold that the trial court properly dismissed count III, albeit on different grounds than the trial court (see *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502).

## CONSUMER FRAUD COUNT

Count IV of plaintiffs' amended complaint alleged that the Authority violated the Consumer Fraud Act (Ill. Rev. Stat. 1989, ch. 121½, pars. 261 through 272). The trial court dismissed the count, concluding that the Authority was not subject to the provisions of the Act and also on grounds of immunity.

Plaintiffs argue that the trial court erred because the series of wrongful acts alleged in count IV are "precisely what this Act was created to protect against." Plaintiffs contend that for purposes of count IV this court should view the Authority as a commercial enterprise rather than a municipal corporation and thus find it subject to the Act.

The Authority responds with four arguments. We find the first argument dispositive of this issue. The Authority argues that under section 10a of the Act (Ill. Rev. Stat. 1989, ch. 121½, par. 270a) municipal corporations such as it are not subject to provisions of the Act, citing *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, which the trial court also relied on. We agree.

Section 10a of the Consumer Fraud Act provides a right of action for violations of the Act against a "person." (Ill. Rev. Stat. 1989, ch. 121½, par. 270a.) The term "person" is defined in section 1(c) of the Act as "any natural person or his legal representative, partnership,

*corporation (domestic and foreign)*, company, trust, business entity or association, and any agent *** thereof." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 121½, par. 261(c).

The Authority notes that in defining "person" the legislature specifically listed "domestic or foreign" corporations, but did not include municipal corporations. They urge that this court apply the statutory construction rule of *expressio unius est exclusio alterius*, pursuant to which a court may find that when certain things are specified or listed in a law, a legislative intention to exclude all others from the law's operation may be inferred. (See *Lunde v. Rockford Public Library Board* (1987), 153 Ill. App. 3d 803, 809-10.) We agree that application of that rule to section 1(c) of the Act leads to the inference that the legislature did not intend to make municipal corporations subject to the Act.

Our conclusion that the Authority is not subject to the Consumer Fraud Act is strengthened by our supreme court's decision in *A, C & S*. In that case, the supreme court held that a school district lacked standing to bring an action under the Act because it was not a "person" within the meaning of the Act. The court rejected the school district's argument that it fell within the definition of a "corporation" stating:

> "The plaintiffs also argue that pursuant to the School Code school districts have the legal status of bodies 'politic and corporate,' with capacity to sue and be sued [citation], and thus fall within the Consumer Fraud Act definition of a 'corporation.' The Consumer Fraud Act clearly makes an unusual distinction that the Act only applies to domestic and foreign corporations. A body politic or municipal entity is neither type of corporation, and we believe that such an interpretation would again ignore language within the Act." (*A, C & S*, 131 Ill. 2d at 468.)

Similarly here, the Authority is a municipal corporation, does not fall within the definition of "person" in the Act, and is therefore not subject to suit under the Act.

We conclude that the trial court properly dismissed count IV of plaintiffs' amended complaint.

### ESTOPPEL COUNT

In count I of plaintiffs' second amended complaint, plaintiffs alleged that the Authority should be required to pay plaintiffs the fairmarket value of the leasehold improvements which plaintiffs made at the airport rather than the depreciated value, as their leases called

for, under an estoppel theory. Plaintiffs alleged that they believed that the Authority would renegotiate their leases to include a fair-market value method of payment since the Authority had done so with many other lessees at the airport. The trial court dismissed this count without articulating a reason.

Plaintiffs argue that the trial court erred because count I adequately stated a cause of action in estoppel. They invoke *Amalgamated Trust & Savings Bank v. Village of Glenview* (1981), 98 Ill. App. 3d 254, for the proposition that the two essential elements to invoke equitable estoppel against a municipality are:

"(1) [that there occurred] an affirmative act on the part of the municipality, and (2) the inducement of substantial reliance on the affirmative act." (*Amalgamated Trust*, 98 Ill. App. 3d at 261.)

They also invoke *City of Chicago v. Sievert Electric Co.* (1985), 134 Ill. App. 3d 552, for the proposition that "[w]hether the doctrine of estoppel may be applied against a municipal corporation depends upon a consideration of all of the circumstances of the case." (*Sievert Electric*, 134 Ill. App. 3d at 556.) Plaintiffs summarily argue that the first element of the two-part *Amalgamated Trust* test, that of an affirmative act on the part of a municipality, is adequately alleged in count I, and that they were induced to rely on that affirmative act, satisfying the second element. The affirmative act alleged by plaintiffs is the Authority's renegotiation of leases with other tenants at the airport.

The Authority responds that the trial court properly dismissed count I because: (1) plaintiffs' leases are valid and should be enforced as written; (2) plaintiffs have failed to adequately allege a *prima facie* estoppel claim; (3) the Authority is not liable under section 2—106 of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 2—106); and (4) the count is barred by the statute of limitations and *laches*.

We believe that the Authority's first argument, that the leases are valid and should be enforced as written, is strong enough that we need not consider the remaining three arguments raised.

Initially, we note that "[p]rinciples of estoppel do not usually apply to public bodies [citation] and estoppel is found against such bodies only in rare and unusual circumstances." *Dean Foods Co. v. Illinois Pollution Control Board* (1986), 143 Ill. App. 3d 322, 337-38; accord *Carey v. City of Rockford* (1985), 134 Ill. App. 3d 217, 219 (the law does not favor a finding of estoppel against a public body).

■ In that context, we believe the trial court properly dismissed count I of plaintiffs' second amended complaint. Prior to dismissing a

similarly worded estoppel count in plaintiffs' amended complaint, the trial court stated:

"The leases were clear that were entered into between the Plaintiff[s] and [the Authority].

The provisions are unambiguous. They're—they provide for—for a formula for compensation.

That was obviously acceptable to all parties at the time they were entered into."

Plaintiffs entered into written leases which stated in clear and unambiguous terms that plaintiffs would be paid the depreciated value of any leasehold improvements when their leases terminated. We find no basis to allow plaintiffs to proceed on an estoppel theory and have a court of law rewrite their leases so that they will be compensated at fair-market value for the leasehold improvements. We find no error in the trial court's dismissal of count I of plaintiffs' second amended complaint.

## SECTION 1983 COUNT

In count II of plaintiffs' second amended complaint, plaintiffs alleged that the Authority took the leasehold improvements without complying with the Eminent Domain Act (Ill. Rev. Stat. 1989, ch. 110, par. 7—101 through 7—129) and thereby deprived plaintiffs of property in violation of section 1983 of the Civil Rights Act of 1871 (42 U.S.C. §1983 (1988)). The trial court dismissed count II without articulating a reason.

Plaintiffs summarily contend that the trial court erred by dismissing count II because it sufficiently stated a cause of action under section 1983. Plaintiffs claim that since the Authority owed them either the depreciated value of the improvements under the terms of the leases, or the fair-market value as argued in this case, plaintiffs maintained a valid property interest in the leasehold improvements.

The Authority responds that plaintiffs have no valid property interest in the leasehold improvements because the unambiguous terms of the leases provided that all leasehold improvements became the property of the Authority and that plaintiffs would be paid the depreciated value of the improvements, when the leases terminated. The Authority argues that inasmuch as the improvements became their property pursuant to the leases, the Eminent Domain Act has no application here. The Authority contends that count II is "frivolous and was properly dismissed."

We briefly review the elements for a section 1983 cause of action. Section 1983 establishes a cause of action for "the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." (42 U.S.C. §1983 (1988).) Two allegations must be made to state a claim under that provision. First, the plaintiff must allege that some person has deprived him of a constitutionally protected right (*Fellhauer v. City of Geneva* (1991), 142 Ill. 2d 495, 514), such as a vested property right (see *Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 577-79, 33 L. Ed. 2d 548, 561-62, 92 S. Ct. 2701, 2709-10). Second, he must allege that the person who has deprived him of that right acted under color of State law. *Fellhauer*, 142 Ill. 2d at 514.

We agree with the Authority that the trial court properly dismissed plaintiffs' section 1983 count. The leases between the Authority and plaintiffs, the validity of which has not been challenged by the plaintiffs, provided that all leasehold improvements became the property of the Authority. The leases also provided that plaintiffs would be paid the depreciated value of the improvements when the leases terminated. This was the deal the two parties struck when they signed the leases. The underlying premise in this section 1983 count, that the Authority could only have taken control of the leasehold improvements through an eminent domain proceeding, contradicts the language of the valid and enforceable leases. We conclude that count II of plaintiffs' second amended complaint was properly dismissed by the trial court.

Since we did not rely on any of the Authority's arguments that it was not liable under the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*) or because plaintiffs' cause of action is barred by the statute of limitations, we have likewise not considered any of plaintiffs' arguments to the contrary.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

NICKELS and BOWMAN, JJ., concur.