Stephen LATHROP, Plaintiff,

v.

JUNEAU & ASSOCIATES, INC. P.C., Joe Juneau, individually and in his official capacity as City Engineer of Granite City, Illinois, Ed Juneau, Charlie Juneau, Dan Brown, individually and in his official capacity as Economic Director of Granite City, Illinois, Ronald Selph, individually and in his official capacity as Mayor of Granite City, Illinois, Mark Spengler, individually and in his official capacity as City Attorney of Granite City, Illinois, Granite City of Illinois, and Other Unnamed Persons, Defendants.

No. 03–CV–0194–DRH.

United States District Court, S.D. Illinois.

Feb. 11, 2004.

Stephen Lathrop, Pro Se, Granite City, IL, for Plaintiff.

John L. McMullin, III, Holly C. Turner, Brown & James, St. Louis, MO, Stephen R. Kaufmann, Burroughs, Hepler et al., Edwardsville, IL, for Defendants.

Stephen R. Kaufmann, Burroughs, Hepler et al., Edwardsville, IL, for Unknown Party.

### MEMORANDUM AND ORDER

HERNDON, District Judge.

#### I. *Introduction*

Before the Court is the motion to dismiss plaintiff's complaint submitted by Dan Brown, Ronald Selph, Mark Spengler and the City of Granite City, Illinois (Doc. 11, 15). *Pro se* Plaintiff Stephen Lathrop is a contractor who apparently had a construction project approved by Granite City's Aldermen and has brought a claim alleging that Defendants wrongfully prevented the completion of his agreement because it would have interfered with another construction project in which all named Defendants had a legal or illegal interest.

## II. *Background*

Plaintiff alleges that Juneau & Associates and its owners, Joe Juneau, Ed Juneau, and Charlie Juneau, overpriced Granite City for construction projects that they obtained by bribing city officials with kickbacks (Complaint ¶¶ 30–31). Plaintiff claims that Defendants' kickback scheme injured him when Defendants purposefully undermined his pending Dobrey Slough construction agreement with Granite City because of its conflicts with one of Juneau & Associates' construction projects.

The following are the main individuals (parties) in this suit:

1. Plaintiff Stephen Lathrop is a contractor in Granite City, Illinois.

2. Defendant Juneau & Associates is a private engineering firm contracted to serve as city engineer for several municipalities.

3. Defendant Joe Juneau is Granite City's civil engineer and an owner of Juneau & Associates.

4. Defendants Ed Juneau and Charlie Juneau are owners of Juneau & Associates.

5. Defendant Dan Brown is Economic Advisor for Granite City.

6. Defendant Ronald Selph is Mayor of Granite City.

7. Defendant Mark Spengler is City Attorney for Granite City.

For the sake of clarity, the Defendants Juneau & Associates, Joe Juneau, Ed Juneau, and Charlie Juneau will be referred to collectively as the "Juneau Defendants." The Defendants the City of Granite City, Dan Brown, Ronald Selph, and Mark Spengler will be referred to collectively as the "Granite City Defendants."

Lathrop's complaint brings these claims against Defendants (Doc. 1):

1. RICO violation of 18 U.S.C. § 1962(c)—premised on federal predicate acts of bribery, wire fraud, mail fraud, and other federal laws; also premised on state predicate acts of bribery, defamation, and other Illinois laws (¶¶ 83–88);

2. RICO violation of 18 U.S.C. § 1962(c) and (d)—same predicate acts as above (¶¶ 89–94);

3. RICO violation of 18 U.S.C. § 1962(a) and (d)—same predicate acts as above (¶¶ 95–100);

4. RICO violation of 18 U.S.C. § 1962(b) and (d)—same predicate acts as above plus fraud under 18 U.S.C. 1342 and "related fraudulent defamatory under U.S.C. 1961(1), 1961(5), and 1962(b)" (¶¶ 101–106);

5. Tortious interference with prospective business relations (¶¶ 107–109);

6. Civil Conspiracy (¶¶ 111–117);

7. Violation of state and federal freedom of information acts (¶¶ 118–120); and

8. Violation of state and federal anti-trust laws (¶¶ 121–126).

Plaintiff proposed a construction project that would have provided flood control measures and a housing development for the Dobrey Slough area in Granite City, Illinois (Complaint ¶ 32). During several meetings from 1998 until the spring of 2000, Plaintiff met with Alderman Kim Hess and Defendants Dan Brown (Economic Advisor) and Joe Juneau (City Engineer) to discuss the need for implementing his flood control measures for Dobrey Slough (Complaint ¶ 32, 33). At the meeting, Plaintiff also explained that Juneau & Associates' construction project at the nearby DonnaLynne subdivision would worsen Dobrey Slough's flooding problems (Complaint ¶ 33). Plaintiff notes in his complaint that the US–Army Corps of Engineers eventually determined that the drainage plan of Juneau & Associates' DonnaLynne project was inadequate when it eventually forced Granite City to construct a $1.8 million drainpipe to Horseshoe Lake from the DonnaLynne subdivision (Complaint ¶ 75).

In the spring of 2000, Granite City Aldermen held an Economics and Downtown Planning Committee Meeting at which Defendant Joe Juneau presented the DonnaLynne proposal (Complaint ¶ 34). Mayor Ronald Selph informed the Aldermen that he had already made an agreement with Juneau & Associates and sought only the Aldermen's authorization to sign the agreement (Complaint

¶ 34). Plaintiff claims the Aldermen never saw the actual agreement but instead relied on the Mayor's misrepresentation that the funds for the project would be repaid within seven years (Complaint ¶¶ 34–35). According to Plaintiff's complaint, the DonnaLynne agreement actually stipulated that the project would cost $800,000 for which the city would not be reimbursed (Complaint ¶¶ 34–35). Plaintiff asserts that Keith Jensen, then city attorney, was not present at the meeting, was unaware of the DonnaLynne subdivision plan, and was denied access to the written agreement by Defendant Mark Spengler (another city attorney)(Complaint ¶ 38). Plaintiff claims several state laws and local ordinances were broken by the approval process and implementation of Juneau & Associates' DonnaLynne subdivision project (Complaint ¶ 39).[1]

In September of 2000, Plaintiff and his prospective backer Don Balsters agreed to seek approval of Plaintiff's Dobrey Slough project (Complaint ¶ 40). Apparently, Plaintiff and Balsters made some progress in negotiations with the Granite City Economic Committee, but Balsters withdrew because of some statements made by Defendants Dan Brown and Joe Juneau (Complaint ¶¶ 40–41). Balsters went with Defendants Dan Brown and Joe Juneau to Plaintiff's house to tell Plaintiff of his withdrawal (*Id.*). Plaintiff claims that a witness heard Dan Brown state that he had just "Knocked the legs out from under Lathrop's project. We can't let him compete with our DonnaLynne subdivision" (Complaint ¶ 42). Plaintiff claims that Defendants made false and groundless statements about him to governmental representatives, agencies, business partners, and financiers to prevent Plaintiff's Dobrey Slough plan from being accepted (Complaint ¶ 36). Specifically, Plaintiff claims that Defendants referred to him as being "shady" (Complaint ¶ 37), not "know[ing] what he is doing" (Complaint ¶ 36), and being "a substandard builder"(Complaint ¶ 36).

On September 10, 2001, Plaintiff found another financial backer, Kent Kehr (Complaint ¶ 43). Apparently, Plaintiff had formed a "pre-annexation agreement" with Granite City in January 1998. On December 4, 2001, the Granite City Economic Committee "authorize[d] the Mayor to re-sign the Agreement" (Complaint ¶ 45). The Committee "seemed fine" with Plaintiff's written proposal at their March 19, 2002, meeting at which financier Kehr requested that the city reacquire 30+ acres given to N & W Railroad (Complaint ¶ 46). It appears Plaintiff's plan was approved (Complaint ¶ 47). However, on March 26, 2002, Defendant Dan Brown as City Economic Director told Kehr by telephone that the project would not be accepted (Complaint ¶ 47). Plaintiff has failed to include the reasons that Dan Brown mentioned to Kehr for why the project would not occur. Plaintiff claims that a witness heard Dan Brown bragging about the fact that he had once again stopped Plaintiff's financial backing and protected Juneau's DonnaLynne project (Complaint ¶ 48).

Beginning on April 9, 2001, Plaintiff began to investigate Juneau & Associates' DonnaLynne project. Plaintiff made requests of certain documents and received a copy of the contract agreement establishing Juneau & Associates' DonnaLynne project (Complaint ¶¶ 53, 54). In his complaint, Plaintiff claims he did not receive other requested documents but fails to mention which documents were not produced.

On April 16, 2002, Plaintiff and his attorney addressed the Granite City finance committee. Plaintiff informed the committee that Defendants had blocked the agreement for the approved Dobrey Slough project (Complaint ¶ 55). Plaintiff claims that the finance committee questioned Defendant Dan Brown on his interference with the plans and then unanimously passed a resolution to have the City Attorney work out a settlement

---

1. Plaintiff states the following laws and regulations were violated: "This DonnaLynne Subdivision: (a) was never brought before Planning and Zoning, (b) never had a Public Hearing, (c) the land was not advertised for sale to the general public, (d) funds for the sewer system were not placed in escrow with the Madison County Special Sewer District, (e) the Special Sewer District was not notified of construction [sic] (f) Sewer District inspections were not called for.... [sic] (g) channeling—diverting storm water where it had never drained before. [sic] (f) [sic] concealing a family cemetery, which the neighbors were aware of."

agreement with Plaintiff to avoid litigation of the matter (Complaint ¶ 56). At the same meeting, Plaintiff informed the committee that the contract agreement for Juneau & Associates' plan did not stipulate for the repayment of $700,000–800,000 even though the committee had been informed that the plan would cost nothing (Complaint ¶¶ 57, 58).

Plaintiff also notes other facts. The title to the land for Juneau & Associates' Donna-Lynne project was once held by Defendant City Attorney Spengler (Complaint ¶ 59). Plaintiff then began seeking additional information concerning the DonnaLynne project but was denied access to this information at the direction of Spengler who claimed the documents could not be released because of pending litigation although no litigation was then pending (Complaint ¶¶ 60–68).

Plaintiff has designated two RICO enterprises based on the facts above: (1) the "Juneau–Granite City Engineering Enterprise" that is composed of all defendants; and (2) the "Juneau Enterprise" that is comprised of Juneau & Associates and its employees (Complaint ¶¶ 17–18).

### III. *Motions Concerning the Granite City Defendants*

The Granite City Defendants, which include the City of Granite City, Dan Brown, Ronald Selph, and Mark Spengler, have set forth several arguments for dismissing Lathrop's claims based on RULE 9(b), RULE 12(b)(6), and lack of subject matter jurisdiction (Doc. 11, 15). RULE 12(b)(6) provides the basis for each of the Granite City Defendants' arguments for dismissal except when RULE 9(b) or subject matter jurisdiction is specifically referenced. The Granite City Defendants have also requested that the Court consider their motion to dismiss as a summary judgment motion based on their attached affidavits if the Court denies their motion to dismiss. The Court has treated these motions strictly as motions to dismiss and has not considered any of the parties' affidavits.

### A. *Dismissal*

RULE 12(b)(6) allows a party to move for dismissal based on "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the court "must accept well pled allegations of the complaint as true. In addition, the court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is generally not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor, Co.*, 745 F.2d 1101, 1106 (7th Cir.1984).

RULE 9(b) allows a party to move for dismissal of a claim based on fraud or mistake when "the circumstances constituting fraud or mistake [are not] stated with particularity." However, the Seventh Circuit has emphasized the flexibility of RULE 9(b) when a party is unable "to obtain essential information without pretrial discovery." *Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir.1998).

First, the Granite City Defendants argue all RICO charges against the City of Granite City should be dismissed because municipalities are incapable of developing the requisite intent for a viable RICO claim (Doc. 11, 15). The Granite City Defendants cite *Frooks v. Town of Cortlandt*, 997 F.Supp. 438, 457 (E.D.N.Y.1998).

■ The Court dismisses the RICO claims against the City of Granite City. Municipalities are not liable for civil RICO claims. *Genty v. Resolution*, 937 F.2d 899, 914(3rd Cir.1991)(noting "Congress, in keeping with the common law, did not intend to subject municipal corporations to RICO liability"); *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir.1991)(citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 261, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981))(stating "RICO claims against [government entities] fall because government entities are incapable of forming a malicious intent"). Therefore, the Court dismisses Lathrop's civil RICO claims

against the City of Granite City, which is a municipality.

■ Second, the Granite City Defendants argue that the civil RICO claims against the city employees Dan Brown, Ronald Selph, and Mark Spengler, should be dismissed based on government immunity (Doc. 11, 15). In support of their argument, Defendants again cite *Frooks v. Town of Cortlandt*, 997 F.Supp. 438, 457 (E.D.N.Y.1998), and make the conclusory statement that the Granite City officials (Selph, Brown, and Spengler) acted in their official capacities (Doc. 15).

The Court dismisses the RICO claims against Dan Brown, Ronald Selph, and Mark Spengler to the claims are based on actions made in their official capacities. If a government official is sued in his "official capacity," then the suit is essentially a claim against the government. *Sanville v. McCaughtry*, 266 F.3d 724, 732–33 (7th Cir.2001)(stating "[o]fficial capacity suits are actions against the government entity of which the official is a part"); *see also Ky. v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Because the City of Granite City cannot be held liable under RICO for the reasons stated above, the suit against the government officials in their "official capacity" also cannot be maintained.

The Court denies the motion to dismiss the RICO claims against Dan Brown, Ronald Selph, and Mark Spengler, based on actions made in their individual capacities. Plaintiff appears to bring suits against the Granite City Defendants in their "individual" as well as "official" capacities (Plaintiff's complaint states, "[Defendant] is an individual and in his official capacity is ...."). To assert a claim against an official in his individual capacity, a plaintiff must assert "that the defendant did something that is tortious independent of the office the defendant holds ..." *Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir.1986)(internal citations omitted). The Court grants Lathrop leave to amend his complaint to assert facts to support his RICO claims against Dan Brown, Ronald Selph, and Mark Spengler, in their individual capacities.

■ Third, the Granite City Defendants argue in the alternative that all RICO charges should be dropped because Plaintiff has failed to allege with sufficient particularity the requisite elements of a viable RICO claim and should be dismissed pursuant to FED. R. CIV. PRO. 9(b) (Doc. 11, 15).

The Court determines that RULE 9(b) does not support dismissing the remaining RICO claims against Dan Brown, Ronald Selph, and Mark Spengler in their individual capacities. RULE 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, "[a] *pro se* complaint is held to 'less stringent standards than formal pleadings drafted by lawyers,' and can be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Henderson v. Sheahan*, 196 F.3d 839, 845–46 (7th Cir.1999)(quoting, respectively, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) and *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))(internal citations omitted). In addition, when a plaintiff has restricted access to information, a court is warranted in relaxing the restrictions of RULE 9(b) and awaiting the plaintiff's access to the facts. *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1050–51 (7th Cir.1998)(relaxing particularity requirements of RULE 9(b) for mail and wire fraud allegations where RICO plaintiff's complaint (1) stated generally the content of fraudulent communications; (2) failed to allege the time and place of the communications; and (3) stated that Defendants possessed the specific information needed to complete RULE 9(b)'s specificity requirements); *see also Rotella v. Wood*, 528 U.S. 549, 560, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)(citing with approval the Seventh Circuit's decision in *Corley*); *Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir.1998). In this case, Plaintiff is *pro se* and alleges that he has been denied access to government documents that could support his claim. Furthermore, Plaintiff has alleged enough facts for Defendants to be aware of Plaintiff's claims. Therefore, Plaintiff's complaint is sufficient

to withstand the requirements of RULE 9(b) at this time. The Court grants Plaintiff leave to file an amended complaint and strongly urges Plaintiff to seek counsel to assist in the preparation of the complaint.

■ Fourth, the Granite City Defendants argue that Lathrop's Federal Freedom of Information Act (FOIA) should be dismissed because it is applicable only to federal governments and not to state governments and employees (Doc. 11, 15).

The Court dismisses Lathrop's Federal FOIA claim against the Granite City Defendants. The Federal FOIA applies only to the federal government. 5 U.S.C. §§ 551, 552; see, e.g., Davidson v. Georgia, 622 F.2d 895, 897 (5th Cir.1980)(stating "the Freedom of Information Act has no application to state governments"). Because Granite City is not part of the federal government, the FOIA is not applicable to the City of Granite City or its employees.

Fifth, the Granite City Defendants argue that the federal anti-trust claim against the City of Granite City should be dismissed because it is immune from anti-trust liability (Doc. 11, 15).

■ The Court dismisses the federal anti-trust claim against the City of Granite City. A municipality is immune from federal anti-trust liability when it acts within its legislatively granted authority. *Campbell v. City of Chicago,* 823 F.2d 1182, 1183–86 (7th Cir.1987)(internal citations omitted). In *Campbell,* the Seventh Circuit noted that "a municipality could obtain the [anti-trust] exemption, if its challenged conduct was authorized by the state legislature, and if the anticompetitive effects were a foreseeable result of the authorization." *Id.* at 1184 (citing *LaSalle National Bank v. Dupage County,* 777 F.2d 377, 383 (7th Cir.1985)). The Illinois legislature has explicitly provided that municipalities may act in anticompetitive ways that do not comply with federal anti-trust laws. 65 ILCS 5/1–1–10 (recognizing that municipalities, in carrying out powers granted under the Municipal Code, are to have full "state action exemption" under federal anti-trust law). Consequently, the status of the City of Granite City's as an Illinois municipality exempts it from anti-trust liability.

■ Sixth, the Granite City Defendants argue that the federal anti-trust claims against Dan Brown, Ronald Selph, and Mark Spengler should be dismissed (Doc. 11, 15). The Granite City Defendants do not cite case law on this point and make the conclusory statement that the Granite City officials (Selph, Brown, and Spengler) acted in their official capacities (Doc. 15).

The Court dismisses the federal anti-trust claims against Dan Brown, Ronald Selph, and Mark Spengler to the extent the claims are based on actions made in their official capacities. If a government official is sued in his "official capacity," then the suit is essentially a claim against the government. *Sanville v. McCaughtry,* 266 F.3d 724, 732–33 (7th Cir.2001)(stating "[o]fficial capacity suits are actions against the government entity of which the official is a part"); *see also Ky. v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Because the City of Granite City cannot be held liable under federal anti-trust laws for the reasons stated above, the suit against the government officials in their "official capacity" also cannot be maintained.

The Court denies the motion to dismiss the federal anti-trust claims against Dan Brown, Ronald Selph, and Mark Spengler, in their individual capacities. Plaintiff appears to attempt to bring suits against the Granite City Defendants in their "individual" as well as "official" capacities (Plaintiff's complaint states, "[Defendant] is an individual and in his official capacity is …"). To assert a claim against an official in his individual capacity, a plaintiff must assert "that the defendant did something that is tortious independent of the office the defendant holds …." *Walker v. Rowe,* 791 F.2d 507, 508 (7th Cir.1986)(internal citations omitted). The Court grants Lathrop leave to amend his complaint to clarify the individual capacity claims against Dan Brown, Ronald Selph, and Mark Spengler.

Seventh, the Granite City Defendants argue alternatively that Lathrop's anti-trust claims should be dismissed pursuant to RULE

9(b) for failure to state the essential elements of a viable federal anti-trust claim (Doc. 11, 15).

The Court determines that RULE 9(b) does not compel dismissal of Lathrop's remaining federal anti-trust claims. RULE 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, "[a] *pro se* complaint is held to 'less stringent standards than formal pleadings drafted by lawyers,' and can be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Henderson v. Sheahan*, 196 F.3d 839, 845–46 (7th Cir.1999)(quoting, respectively, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) and *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))(internal citations omitted). In addition, when a plaintiff has restricted access to information, a Court is warranted in relaxing the restrictions of RULE 9(b) and awaiting the plaintiff's access to the facts. *See, e.g., Emery v. American General Finance, Inc.,* 134 F.3d 1321, 1323 (7th Cir.1998); *Corley v. Rosewood Care Center, Inc. of Peoria,* 142 F.3d 1041, 1050–51 (7th Cir.1998); *see also Rotella v. Wood,* 528 U.S. 549, 560, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)(citing with approval the Seventh Circuit's decision in *Corley*). In this case, Plaintiff is *pro se* and alleges that he has been denied access to government documents that could support his claim. Therefore, Plaintiff's complaint is sufficient to withstand the requirements of RULE 9(b) at this time. The Court grants Plaintiff leave to file an amended complaint and strongly urges Plaintiff to seek counsel to assist in the preparation of the complaint.

Eighth, the Granite City Defendants argue that all state claims against them should be dismissed for lack of subject matter jurisdiction if the Court determines that all claims concerning a federal question should be dismissed (Doc. 11, 15).

The Court denies the Granite City Defendants' request to dismiss all non-federal claims for lack of subject matter jurisdiction. First, the Court has not dismissed all of Lathrop's federal claims against the Granite City Defendants. The Court has granted Lathrop leave to amend his complaint to restate his RICO and federal anti-trust claims against Dan Brown, Ronald Selph, and Mark Spengler in their individual capacities. Second, this Court has supplemental jurisdiction over the Granite City Defendants pursuant to 28 U.S.C. § 1367 since the state claim of civil conspiracy against the Granite City Defendants involves the same case or controversy as the federal claims against the Juneau Defendants. *Wilson v. City of Chicago,* 120 F.3d 681, 683–84 (7th Cir.1997).

Ninth, the Granite City Defendants argue that state claims based on "events and/or occurrences" that took place more than a year before the complaint was filed should be dismissed pursuant to Illinois' statute of limitations for state claims against Illinois government bodies (Doc. 11, 15).

The Court dismisses Lathrop's state claims to the extent they allege *injuries* or *causes of actions* that arose before March 25, 2002. In Illinois, the statute of limitations for actions filed against municipalities and their employees, officers or agents acting in their official capacities is "one year from the *date the injury was received* or *the cause of action accrued.*" 745 ILCS 10/8–101; *see Hermitage Corp. v. Contractors Adjustment Co.,* 166 Ill.2d 72, 77–79, 209 Ill.Dec. 684, 651 N.E.2d 1132 (1995)(noting Illinois' "discovery rule"). In this case, Plaintiff has alleged numerous facts that occurred more than one year before he filed his complaint. The Court dismisses state claims based on injuries and causes of actions (in contrast to "events and/or occurrences") that arose more than a year before the filing of Plaintiff's complaint. However, this does not dismiss state claims against Dan Brown, Ronald Selph, and Mark Spengler that are based on actions in their individual capacities or outside their scope of authority.

Tenth, the Granite City Defendants argue that Illinois anti-trust claims against the City of Granite City should be dismissed because municipalities are immune from Illinois anti-trust liability (Doc. 11, 15).

■ The Court dismisses the Illinois anti-trust claims against the City of Granite City. Municipalities and their employees, agents and officers are immune from liability under the Illinois Anti–Trust Act. 740 ILCS 10/5(15); Ill. Const. Art. 7, § 1; *see also Alarm Detection Sys., Inc., v. Village of Hinsdale,* 326 Ill.App.3d 372, 385, 260 Ill.Dec. 599, 761 N.E.2d 782 (2001)(citing *Du Page Aviation Corp. v. Du Page Airport Auth.,* 229 Ill.App.3d 793, 802, 171 Ill.Dec. 814, 594 N.E.2d 1334 (1992)). Therefore, the Illinois anti-trust claims against the City of Granite City should be dismissed.

■ Eleventh, the Granite City Defendants argue that Illinois anti-trust claims against Dan Brown, Ronald Selph, and Mark Spengler should be dismissed because municipal employees acting within the scope of their employment are immune from Illinois anti-trust liability (Doc. 11, 15).

The Court denies the motion to dismiss Lathrop's Illinois anti-trust claims against Dan Brown, Ronald Selph, and Mark Spengler. Illinois anti-trust claims cannot be brought against government officials acting within the scope of their authority. *Alarm Detection Sys., Inc., v. Village of Hinsdale,* 326 Ill.App.3d 372, 385, 260 Ill.Dec. 599, 761 N.E.2d 782 (2001). Assuming the facts in the complaint as true as required by the RULE 12(b)(6) standard, Plaintiff has alleged facts that show Dan Brown, Ronald Selph, and Mark Spengler may have acted beyond the scope of their authority. However, the Court notes that Plaintiff can bring Illinois anti-trust claims against these Defendants only to the extent they acted outside the scope of their authority.

Twelfth, the Granite City Defendants argue that Lathrop has failed to allege sufficient facts to show the elements necessary to establish an Illinois civil conspiracy claim. First, they argue that Lathrop's facts do not suggest the Granite City Defendants had an agreement to commit a tortious or unlawful act (Doc. 11, 15). Second, Defendants argue that Lathrop has not asserted an additional, independent, and legitimate tort upon which a civil conspiracy claim could be based (Doc. 11, 15).

■ The Court determines that Lathrop has stated sufficient facts to support his Illinois civil conspiracy claim. First, a plaintiff's claim based on Illinois civil conspiracy must include facts tending to show an agreement among the defendants to commit a tortious or unlawful act. *McClure v. Owens Corning Fiberglas Corp.,* 188 Ill.2d 102, 133, 241 Ill.Dec. 787, 720 N.E.2d 242 (1999). In this case, Lathrop has alleged that there was an agreement among the Granite City Defendants and Juneau Defendants to interfere unlawfully with his business. Second, an Illinois civil conspiracy is not an independent tort, and failure to plead properly an independent cause of action on which the conspiracy is allegedly based requires dismissal of the conspiracy claim. *Indeck N. Amer. Power Fund v. Norweb,* 316 Ill.App.3d 416, 432, 249 Ill.Dec. 45, 735 N.E.2d 649 (2000)(citing *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888 (1994)). In this case, Lathrop has alleged the independent tort of unlawful interference with his business. Therefore, Lathrop has properly pleaded a claim based on Illinois civil conspiracy.

Thirteenth, the Granite City Defendants argue that Lathrop's remaining Illinois anti-trust claims should be dismissed pursuant to RULE 12(b)(6) because Plaintiff has failed to plead with particularity the essential elements of an Illinois anti-trust claim (Doc. 11, 15).

The Court grants Lathrop leave to amend his complaint to reassert the essential elements of an Illinois anti-trust claim against Dan Brown, Ronald Selph, and Mark Spengler based on actions beyond the scope of their authority. Assuming the facts in the complaint as true as required by the RULE 12(b)(6) standard, it is not clear that the numerous facts in Lathrop's complaint fail to support such Illinois anti-trust claims against these particular Defendants.

With regard to elements of his complaint that are unsatisfactory under RULE 9(b), the Court grants Lathrop leave to amend his complaint until *April 30, 2004.* A court must allow a plaintiff pretrial discovery to obtain facts needed to assert a fraud claim in compliance with RULE 9(b) when no other

opportunity to obtain information has been afforded him. *See, e.g., Emery v. American General Finance, Inc.,* 134 F.3d 1321, 1323 (7th Cir.1998)(noting "[w]e don't want to create a Catch–22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery ... that she could not conduct before filing the complaint"). In his complaint, Plaintiff claims that he has been denied access to all government documents with the exception of the DonnaLynne agreement and title to the land for the DonnaLynne project. Plaintiff must be granted an opportunity to obtain facts through the discovery process since access to government documents was denied to him prior to the filing of his complaint.

## IV. *Conclusion*

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** the Granite City Defendants' motion to dismiss (Doc. 11).

The Court **GRANTS** Defendants' motion and **DISMISSES** claims against the City of Granite City with regard to RICO, federal anti-trust laws, Illinois anti-trust laws, federal FOIA, and state claims resulting from injuries or causes of actions that occurred before March 25, 2002. The Court **DENIES** the motion to dismiss claims against the City of Granite City based on civil conspiracy.

The Court **GRANTS** Defendants' motion and **DISMISSES** claims against Dan Brown, Ronald Selph, and Mark Spengler, based on actions within their official capacities or in the scope of their authority with regard to RICO, federal anti-trust claims, Illinois anti-trust, and state claims resulting from injuries or causes of actions that arose before March 25, 2002. The Court **GRANTS** Defendants' motion and **DISMISSES** claims against Dan Brown, Ronald Selph, and Mark Spengler based on federal FOIA. The Court **DENIES** the motion to dismiss claims against Dan Brown, Ronald Selph, and Mark Spengler based on actions in their individual capacities or outside the scope of authority with regard to RICO, federal anti-trust, Illinois anti-trust, and state claims resulting from injuries

or causes of action that arose before March 25, 2002.

The Court **GRANTS** Plaintiff **LEAVE** until *April 30, 2004,* to file an amended complaint with regard to his claims against Dan Brown, Ronald Selph, and Mark Spengler that have not been dismissed and that have been shown by Defendants to be deficient under RULE 9(b). The Court **STRONGLY URGES** Plaintiff to retain counsel.

**IT IS SO ORDERED.**

